A. J. EDMISTON, APPELLEE, v. L. U. HUPP ET AL.,
APPELLANTS.

FILED APRIL 3, 1915.     No. 18047.

Specific performance is not generally a legal right, but is directed to
the sound legal discretion of the court, and it will not be granted
where its enforcement would be unjust.

APPEAL from the district court for Saunders county:
EDWARD E. GOOD, JUDGE. *Reversed.*

*B. E. Hendricks* and *Charles H. Slama,* for appellants.

*Herman N. Mattley, F. H. Mizera* and *C. M. Skiles,*
contra.

MORRISSEY, C. J.

May 23, 1910, the parties entered into the following con-
tract, which is partly printed and partly written:

"CONTRACT FOR CLOSING SALES.

"This agreement, entered into by and between A. J. Ed-
miston, as party of the first part, and L. U. Hupp and
Richard McCluhan, as party of the second part, WIT-
NESSETH: That said party of the first part has this day
bargained and sold, and by these presents does bargain,
sell and agree to convey by a good and sufficient warran-
ty deed, January 1, 1911,   *   *   *   the following real es-
tate in Sully county, state of South Dakota, to wit:   The
southeast quarter of section twenty-one in township one
hundred thirteen, range seventy-eight.

"It is hereby agreed that said party of the second part.
is to pay to said party of the first part, as the purchase
price of said real estate, the sum of forty-six hundred forty
dollars, payable as follows:   Two hundred dollars cash,
the receipt of which is hereby acknowledged.   Three thou-
sand dollars payable January 1, 1911.   The parties of the
second part hereby assume a mortgage of fourteen hundred
forty dollars drawing six per cent. per annum from May

23, 1910.   Said party of the first part hereby reserves
the following crops now growing on said real estate : "Pos-
session of said real estate to be given on or before the 1st
day of January, 1911.   Deed to be made and delivered
at Morse Bluff, Nebraska, on or before the 1st day of Jan-
uary, 1911.

"Said party of the first part hereby agrees to furnish
said party of the second part an abstract of title show-
ing perfect title thereto.   Should said abstract show per-
fect title, said purchase price is to be paid in the manner
aforesaid.   Should abstract not show perfect title, party
of the first part is granted two months in which to perfect
the same.   Should the abstract disclose a title so defective
that same cannot be made perfect, then this contract shall
be void, and any and all sums of money paid hereunder
shall be repaid to party of the second part.   Should either
party to this contract fail, neglect or refuse to comply with
each and every material agreement herein contained, on
his part to be performed, the party so in default shall for-
feit and pay over to the party not in default as liquidated
damages the sum of one hundred dollars.     In witness
whereof, said parties have hereunto set their hands this
23d day of May, 1910."

It is claimed by Edmiston, the plaintiff, to be a contract
for the sale of the land described. It is claimed by the de-
fendants to be merely an option to purchase; but they insist
that if the contract, strictly construed, amounts to a con-
tract for the sale and purchase of the land, nevertheless
they understood, it to be a mere option contract, and that
it should be so construed, in order that it may meet the
mutual intentions of the parties.   At the time the contract
was made the defendant McCluhan paid the plaintiff $100
in cash, and the defendant Hupp paid him $50 in cash and
gave his promissory note for $50.   In December following
the execution of the contract the plaintiff and his wife
executed a warranty deed in due form for the premises,
and deposited it, together with an abstract of title, in the
bank at Morse Bluff, for delivery to the defendants, with
instructions. to deliver these papers to the defendants up-

on the payment of the balance stipulated in the contract. The bank notified the defendants of the deposit of the papers, but no money was paid and nothing further was done to complete the transfer. August, 13, 1912, plaintiff brought this action in the district court for Saunders county, praying for specific performance of contract. Trial was had to the court, and a decree entered, holding that the contract was one for the sale and purchase of the real estate described, and entering a decree in favor of plaintiff for specific performance. Defendants appeal.

For some time prior to the making of this contract, the plaintiff was the station agent at Morse Bluff, Nebraksa, and the defendant Hupp was the village barber, but conducted a real estate business as a side line, while the defendant McCluhan was a well-to-do farmer living close to the village. In the spring of that year McCluhan arranged to go to Blunt, South Dakota, near which town this land is located, with a real estate dealer who was offering land in that vicinity for sale. He bought his railroad ticket from plaintiff, and plaintiff gave him the numbers of his land and suggested that he look it over. However, McCluhan did not inspect the land on that occasion. Shortly after the return of McCluhan from South Dakota, Hupp and the plaintiff entered into negotiations, but McCluhan and plaintiff never had any conversation in relation to the agreement. The contract was drawn, at the bank on blanks furnished by Hupp. The defendants testified that they thought they were signing an option contract, and that if they failed to complete the deal they would simply lose $100 each as provided in the final paragraph, or the stipulation in the contract. It is conceded that the defendant Hupp was, and is, insolvent, and his lack of means was, without doubt, known to the plaintiff. Defendants claim that they entered into this agreement, hoping that before the expiration of their option they might be able to sell the land at a profit, and with this in view risked the small payment which they made, but that they never understood that they were bound to pay the balance of the purchase price unless they might so elect. In December following

McCluhan made a second journey to Blunt, South Dakota. The purpose of this second trip is not made entirely plain, but it appears that he inspected this land. He describes it as grazing land, located 16 miles from Blunt, with considerable surface rock, and worth from $18 to $20 an acre. Soon after his return he and plaintiff met and talked over the trip. The full conversation is not given, but plaintiff testifies that he asked Mr. McCluhan to go ahead and complete the deal. He admits, however, that he did not ask him for any money. The evidence also discloses that in December, 1910, before the time for the delivery of the deed, the plaintiff had a talk with one Raitt, in which he told Raitt that he had sold the land to McCluhan and Hupp, and that they had paid him $200, but he did not know whether they were going to lose this money, or whether they would go through and complete the deal; that he needed money, and asked Raitt if he thought there would be any chance of disposing of it, and said he wanted to sell it. The testimony of witness Bucholz is also to the effect that Edmiston told him in December, 1910, that he would like to sell the land.

The issues appear to be narrowed down to the one question: What kind of an agreement did these parties believe they were making? Section 341 of the Code provides: "When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it." Did the plaintiff have the right to suppose that the defendants thought they were entering into a contract which bound them irrevocably to the purchase of the land? He knew that Hupp had little, if any, means. He also had reason to believe that neither of the parties had inspected the land. The clause in the contract providing that, if either party defaulted, he should pay liquidated damages in the sum of $100 might well be understood by men who are not learned in the law to mean that, by forfeiting this amount, they would be relieved from all liability. It stands to reason that the defendant Hupp, who was without means, would

not have made the contract, had he understood it in any other light, nor would the defendant McCluhan have bound himself for the full purchase price without having first inspected the real estate. Men of ordinary prudence do not buy farms without seeing them. We believe the subsequent conduct of the plaintiff indicates that he understood the contract as an option, and knew that the defendants so understood it. Before the time for the final payment had expired, he is shown to have remarked that they might not complete the deal, but might elect to lose the money they had paid, and offered to sell the land to other parties. If he had believed that he had an enforceable contract under which he could compel these people to pay him the balance of the purchase price, he would not have been likely to say that they might conclude to abandon the contract and lose the money they had paid.

Specific performance is not generally a legal right, but is directed to the sound legal discretion of the court, and it will not be granted where its enforcement would be unjust. The plaintiff waited more than two years before bringing this action. It is not necessary to decide, and we do not decide, that by this delay he is barred of any remedy he might have; but it is a circumstance which we feel at liberty to consider in determining the view which the parties themselves took of the contract. Even assuming that the plaintiff believed he had made a contract for the sale of the property, we are constrained to believe that the defendants understood it in quite a different way; that they believed they had taken an option only, and that the plaintiff was aware of the view taken by the defendants.

The decree of the district court is

REVERSED.

BARNES, FAWCETT and HAMER, JJ., not sitting.