WILLIAM E. HAHN, APPELLEE, V. GENERAL AMERICAN LIFE
INSURANCE COMPANY, APPELLANT.

272 N. W. 321

FILED APRIL 2, 1937. No. 29947.

Brown, Fitch & West, for appellant.

Abrahams & O'Connor, contra.

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and
CARTER, JJ., and CLEMENTS, District Judge.

DAY, J.

In this, an action on a life insurance policy, the insurer
appeals from an adverse judgment. The defense proffered
was that the insured during his life elected to accept a
settlement of the anticipated cash surrender value as here-
inafter described. The policy was issued in 1910, by a com-
pany which later reinsured in another company and later
reinsured in the Missouri State Life Insurance Company.
September 7, 1933, the General American Life Insurance
Company purchased the assets and assumed the liabilities
of the then insolvent Missouri State Life Insurance Com-
pany, specifically including this policy. It is unnecessary
to set out all the provisions of this contract between the
insurance commissioner of Missouri as liquidating agent
and the company. It is sufficient that by its terms the com-

pany assumed the risk of insuring the life of the policyholder without any action on the part of the insured. It is conceded that the policy was in force as a contract of insurance unless the insured elected to file a claim with the insurance commissioner for one-half of the anticipated cash surrender value. Therefore, a pertinent part of the contract is: "The filing by any policyholder with such commissioner or commissioners of his claim under any policy for payment under article 1 hereof (of one-half the cash surrender value) shall constitute an election to surrender all other rights under such policy."

The company contends that the insured filed such a claim as surrendered all other rights under the policy including the obligation to pay in the advent of death the sum stipulated in the policy. What did the insured do?

He filed an action against the Missouri State Life Insurance Company in the district court for Douglas county for the cash surrender value of the policy on September 7, 1933. This is the very day the General American Life Insurance Company executed the contract as to the assets and liabilities of the Missouri State Life Insurance Company. A special appearance was filed therein which was sustained on December 9, 1933. December 7, 1933, the insured filed a claim in the circuit court of the state of Missouri for the city of St. Louis, in an action pending entitled "O'Malley, Superintendent of the Insurance Department of the State of Missouri, v. Missouri State Life Insurance Company" for the cash surrender value of this policy. This claim was filed by the insurance commissioner in an office he maintained adjacent to and connected with the offices of the General American Life Insurance Company. If this claim had been considered regular and in proper form by the assistant to the insurance commissioner, it would have been referred to the actuarial department of the insurance company to determine the amount of the anticipated cash surrender value and the amount to be paid thereon under the contract. But it was not considered regular and was not so referred because the insured stated

in his affidavit that the filing of this claim was not to jeopardize his lawsuit then pending in the district court for Douglas county, Nebraska. And this claim was for the entire anticipated cash surrender value. It was not for one-half thereof, for which the company was liable under the contract of assumption.

This was not regarded as a filing of a claim under the contract either by the insurance commissioner or by the General American Life Insurance Company. The assistant actuary of the company testified: "By having a claim filed, I mean in order, because there were numerous cases that were not properly filed by the policyholder where they had to go back at him and we weren't notified the claim had been filed because the representative of the superintendent of insurance didn't consider the claim had been filed." He further testified that, assuming the claim had been filed December 7, 1933, their records, which were in a confused state in the beginning because so many claims were filed, would have shown the claim by May, 1934. The claim was placed in the files of the commissioner in an office adjacent to and connected with the offices of the company, which files were accessible to the officials and employees of the company. It appears that the officers and employees consulted these files and checked their records with them. The legal department of the company knew about the claim but took no action upon it as a claim until more than a year later, after the death of the insured. The claim department knew about it also. The legal department of the company did not regard the suit in Douglas county as a pending action. The special appearance filed in that action was sustained December 9, 1933. A member of the law department testified as follows: "But so far as I know, at some time after December 9, 1933, it was regarded as finally terminated."

In the appellant's brief it is stated: "Clearly, there was never a meeting of the minds, never a contractual relation between Richard J. Hahn and the defendant company that his policy should be in force." This is not a correct state-

ment, since under the contract the policy was in force as a liability of the General American Life Insurance Company unless the insured by his acts contracted to accept instead one-half of the anticipated cash surrender value of the policy and surrender all other rights thereunder. It is not established by the record that the insured had any knowledge of the terms of the contract. The action in Douglas county, Nebraska, was predicated upon the original contract of insurance and so also was the claim filed with the insurance commissioner. There is nothing in either the action or the claim which indicates that the insured had any intention to avail himself of the provisions of the contract between the insurance commissioner and the General American Life Insurance Company, and accept one-half of the cash surrender value provided by the original contract. It seems conclusive that the insured never by such act elected to accept a fraction of the surrender value in lieu of a contract insuring his life.

The light in which the General American Life Insurance Company regarded the effect of the filing of the claim, as filed, has already been discussed somewhat. There is other evidence upon this question. A letter written by the attorney for the insured dated March 6, 1934, inquires as to the status of the claim. This has not been overlooked. A reply from the attorney for the superintendent of insurance states that nothing has been done in the matter "because of the fact of the commissioner's office to date having been fully occupied with disposing of the *ordinary* claims for cash surrender." (Italics ours.) This fits perfectly in the pattern that the claim filed was not considered as coming within the purview of the contract. This is the last date upon which any communication with insured relative to the claim occurred. The status of the matter at this time was that the special appearance in the case in Nebraska had been sustained December 9, 1933.

But that is not all. Thereafter, on November 8, 1934, the insured filed a request for a change of beneficiary under the policy with the company's agent in Omaha, Ne-

braska. The agent sent the request with the policy to the office of the General American Life Insurance Company at St. Louis. The policy was returned to the insured with the change of beneficiary requested indorsed upon the policy, by the "General American Life Insurance Company, Chas. Kell, Ass't Secretary." This indorsement was dated November 14, 1934. It is interesting to note that this is fourteen months after the filing of the action in Nebraska and eleven months after the filing of the claim with the insurance commissioner in St. Louis. During all these months it was not considered by any one as a claim under the contract for the sale of assets and assumption of risk. This conclusion is reached without consideration of the acts and statements of the Omaha agent to the effect that the claim had been dismissed. There is testimony that the insured asked the agent to make sure that such was the case and that the agent replied that he was sure. But the efficacy of this policy does not rest upon the statements of the agent made at that time, nor upon those made by him after the death of insured. The policy was sent to the general office of the company and the indorsement was made by an officer of the company. Thus, the General American Life Insurance Company recognized the policy of insurance on the life of Richard J. Hahn as in force on November 14, 1934, and never questioned its vitality until January 25, 1935, a month after his death.

Assuming that the insured filed a claim under the contract by which the defendant assumed the risk, the parties by their subsequent acts abandoned the provisions thereof, the insured by his request of a change of beneficiary and the insurer by complying with the request. The provisions of a contract will be considered abandoned where each party performs acts inconsistent with its existence and acquiesces in such acts by the other. *Reichert v. Mulder,* 121 Neb. 11, 235 N. W. 680; *Herpolsheimer v. Christopher,* 76 Neb. 352, 107 N. W. 382.

The circumstances commend the application of this rule to this case. More than 4,700 claims were filed under the

514

provision of the contract. More than 500 of them were withdrawn. No formality was required for a withdrawal of such claim. A mere suggestion was sufficient. Practically, it was not an irrevocable election as contended by the appellant. The request for a change of beneficiary was a notice to the company that such claim was withdrawn. The company's consent was an acquiescence. And in this case the Omaha agent was told that the insured wanted assurance that the claim as filed was withdrawn.

Much of the testimony relates to the defendant's system of handling its business, the great number of claims, and the condition of the books at the time of the reorganization. The officials of the company in the claim and legal departments knew all about the status of the policy. The change of beneficiary was made by another department, which acted upon the information in the records of the company showing this policy in force. The official who indorsed the change of beneficiary did not have knowledge of the nature of the claim filed with the insurance commissioner, but the information was available to him, and the company had knowledge of the facts through other officials. This is a problem of business administration for the company, but it certainly is not a risk the insured must assume.

A jury was waived and the case tried to the district court. The judgment of the trial court is supported by the evidence.

AFFIRMED.