ANDREW C. NELSON, APPELLANT, V. ORPHA CROSS ET AL., APPELLEES.

40 N. W. 2d 663

Filed January 13, 1950. No. 32681.

*Torgeson & Halcomb,* and *Bernard F. O'Brien,* for appellant.

*Ivan Van Steenberg* and *W. H. Kirwin,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for specific performance of a contract to convey real estate. The defendants are Orpha Cross and John Cross, wife and husband, and Frank P. Jessup, executor of the estate of William A. Scoville, deceased. The trial court held the contract for naught, dismissed plaintiff's petition, and quieted title in defendant Orpha Cross. Plaintiff appeals. We affirm the judgment of the trial court.

The cause is here for trial de novo under the provisions of section 25-1925, R. R. S. 1943.

The record establishes the following factual situation.

The land involved is an 80-acre tract of farm land in Banner County, and was owned by Mr. Scoville. On September 1, 1943, Mr. Scoville made his last will and testament. In it he devised the land here involved, together with other land, to his daughter, the defendant Orpha Cross. He also set up a trust fund for the benefit of his wife. On November 2, 1944, he made a codicil to this will in which he ratified the above provisions.

The plaintiff was a son-in-law of Mr. Scoville. On September 24, 1943, plaintiff and Mr. Scoville appeared at the office of one of the attorneys now representing defendants and discussed the drafting of a contract of sale of this land. The attorney did not draw the contract. Thereafter they went to the office of another attorney in Kimball who prepared the contract involved here. Mrs. Scoville was not then present. A question was raised at that time as to the competency of Mrs. Scoville to execute the contract.

The contract was drafted reciting that Mr. and Mrs. Scoville, as parties of the first part, agreed to convey the property to the plaintiff, as party of the second part. It recited a consideration of $1,600, $500 of which was acknowledged as in hand paid, and the balance was to be paid "* * * so soon as good and sufficient Abstract of Title shall be furnished showing party of the first part in a position to convey his interest and proper pro-

ceedings shall have been brought to make possible the conveyance of the interest of Emma Grace Scoville incompetent wife of the party of the first part. Party of the second part pay the costs incurred in connection with the latter proceedings in the event good and sufficient title is conveyed pursuant to the terms of this contract otherwise party of the first part shall pay said costs Emma Grace Scoville joins as a party of the first part in this contract." The contract also provided that "It is expressly agreed that the party of the second part shall have immediate possession of said real estate and shall be entitled to begin necessary proceedings for the performance of this contract is recognized that John R. Cross has planted winter wheat on said real estate and is entitled to harvest the same during 1944 party of the second part to receive landlord's one-third share."

Time was made an essential element of the contract. The contract provided for no interest on the deferred payment. It required the plaintiff to pay all taxes subsequent to 1943, and if plaintiff failed to perform any of the covenants on his part, the contract could be forfeited and determined at the option of the Scovilles.

The attorney required the presence of Mrs. Scoville and someone to identify her. The plaintiff and Scoville later came to the office with Mrs. Scoville and a sister, known to the attorney. The contract was read to the parties. Mrs. Scoville undertook to sign the contract and made a "writing" or "marks" where her signature would ordinarily appear. Plaintiff and Scoville signed the contract. Mrs. Scoville took no part in the conversation. When asked if she acknowledged the contract to be her voluntary act and deed, she replied "Yes." The attorney executed the usual notary's certificate of acknowledgment.

The attorney wrote out a check for $500, payable to Scoville, which plaintiff signed. The attorney testified that the check and a copy of the contract then were handed to Scoville and returned to him with instructions

to hold until the transaction was completed. The contract was filed for record on September 25, 1943.

On the day following the signing of the contract a petition was prepared, and filed on September 28, 1943, in which it was recited that Mrs. Scoville was mentally incompetent and in which Mr. Scoville petitioned for the appointment of himself as the guardian of the estate of Mrs. Scoville. The attorney who drafted the contract appeared as Scoville's attorney. Thereafter on October 14, 1943, the defendant Orpha Cross objected to the appointment of Scoville as guardian and suggested the name of a third person. It does not appear that any further action was taken in the proceedings although we are advised by briefs that a third person not suggested by Mrs. Cross was named as guardian. The attorney testified that he did not represent plaintiff in these proceedings and that plaintiff did not pay the costs.

Apparently immediately after September 24, 1943, plaintiff contacted an auctioneer, sent him to Scoville, and the personal property of Scoville on the farm was sold October 4, 1943. The sale bill contained the words "Having sold my farm." The auctioneer testified that he did not get that information from plaintiff but did from Scoville.

On October 15, 1943, Mr. Scoville's attorney wrote the attorney who drafted the contract and who held the papers that he (Scoville) had decided not to go through with the sale as, it was the attorney's understanding, Scoville had the right of cancellation. This letter does not appear to have been answered. Apparently it was sent as a result of a letter from Scoville to his attorney in which he stated that the proposed sale was causing dissension in his family, and that Mr. Nelson had agreed to let him call the matter off. He requested that notice be given to Mr. Nelson and also requested a statement of court costs so that he (Scoville) could pay them.

On May 31, 1944, Mr. Scoville wrote the attorney holding the papers that he was advised "today" that the

attorney was still holding the plaintiff's check in connection with the offer of purchase, and that he (Scoville) had notified plaintiff "last October" that he would not sell, and authorized a return of the check. This letter does not appear to have been answered until January 31, 1945, when Mr. Scoville was advised that the plaintiff had refused a tender of the check and referred to it as "deposited here in escrow."

On July 29, 1945, Mr. Scoville died. His will was offered for probate. The will was contested and the cause reached here where the issues presented were determined in an opinion filed March 12, 1948. In re Estate of Scoville, 149 Neb. 415, 31 N. W. 2d 284. Our mandate was filed May 4, 1948.

It appears affirmatively from the record that at no time during the period here involved, and not until this action was instituted, did plaintiff ever demand possession or payment of the rents from the tenant or from Orpha Cross, the devisee and present titleholder, or from the special administrator and executor. It does not appear that the plaintiff made any representations to the executor of the existence of the check as an asset of the estate. There is evidence that the land was worth considerably more than the price named in the contract and had since that time greatly increased in value. It does not appear who, if anyone, paid the taxes.

According to the transcript, petition was filed herein and summons issued September 22, 1948. By registered letter dated September 23, 1948, plaintiff sent a check to Orpha Cross for $1,600, "representing the full amount due under my contract with Mr. Scoville" for the purchase of the 80 acres. The check was returned.

Plaintiff alleged the execution of the contract, the payment of $500, the performance of all conditions on his part, his willingness to complete performance, the death of Scoville, the contest of the will, the vesting of title in Orpha Cross, the tender to Orpha Cross of $1,600, and the request and refusal to convey. Plaintiff further

alleged that as a result of the trust provision in the will the widow had no interest in the land. He prayed for specific performance and an accounting for rents and profits.

Defendant Orpha Cross answered pleading false representations to Scoville as to the value of the property, an agreement of plaintiff with Scoville to relinquish the contract if Scoville was dissatisfied, and the deposit of the check for $500. She further alleged that the check was never accepted; that Scoville considered the contract terminated; that plaintiff never entered into possession and never attempted to collect the rents; that plaintiff never demanded the institution of legal proceedings to secure authority to make a conveyance for Mrs. Scoville; that Mrs. Scoville was incompetent on September 24, 1943; that plaintiff had abandoned the contract; that Scoville and the executor had collected the rents; that plaintiff was estopped; that the value of the land had greatly increased; and that plaintiff was guilty of laches. She prayed for dismissal of plaintiff's petition, and that title be quieted in her as against the plaintiff.

We do not deem it necessary to set out the separate answers of John Cross, the tenant, or Mr. Jessup, the executor. Both prayed for dismissal of plaintiff's petition.

The matter was tried to the court. The court found generally for the defendants and against the plaintiff and "The court further finds that a much better trial of this case could have been had if the plaintiff had brought his action during the lifetime of W. A. Scoville; that the delay in bringing this action has been to the detriment of the devisees of the land involved in this action and to the personal representative of the said W. A. Scoville; that the change in conditions because of the lapse of time and the death of W. A. Scoville, which transpired during the delay, the form of the execution of the alleged contract involved in the action, are all elements which this court has taken into consideration in denying the prayer of the plaintiff."

Plaintiff's first assignment of error is that the trial court erred in refusing to decree specific performance of the contract.

One of the issues presented by the defendant Orpha Cross is that the contract was abandoned.

The applicable rule has been stated as follows: "An abandonment of a contract may be effected by acts of one of the parties thereto, which are inconsistent with its existence and acquiesced in by the other party." Hall v. Eccles, 46 Neb. 880, 65 N. W. 1058. See, also, Herpolsheimer v. Christopher, 76 Neb. 352, 107 N. W. 382, on rehearing, 76 Neb. 355, 111 N. W. 359, 9 L. R. A. N. S. 1127; Baker v. School District, 120 Neb. 513, 233 N. W. 897; Reichert v. Mulder, 121 Neb. 11, 235 N. W. 680; Hahn v. General American Life Ins. Co., 132 Neb. 509, 272 N. W. 321.

We have heretofore set out provisions of the contract. We think it apparent from the terms of the contract that it was not to be performed save and unless proceedings were instituted and authority had to convey the interest of the incompetent Mrs. Scoville. Plaintiff produced evidence that the provision that plaintiff was to pay costs if the proceedings were successful, and otherwise Mr. Scoville was to pay them, was inserted because the court might refuse authority to convey, and plaintiff was not to be obligated for costs in that event. Those proceedings were immediately brought by Mr. Scoville, resulting in objections to the appointment of Mr. Scoville, filed immediately by Orpha Cross. Mr. Scoville then abandoned those proceedings and about that same time gave his first notice that he would not perform. Plaintiff took no action to secure authority for the conveyance of Mrs. Scoville's interest, although the contract specifically gave plaintiff the right "to begin necessary proceedings for the performance of this contract." Clearly he acquiesced in the abandonment of the proceedings which the contract itself recognized as a condition to performance.

204

The contract does not expressly fix a date for performance, yet we think its terms indicate an intent to perform within a reasonable time after its execution. The contract provides for performance "so soon as" the party of the first part was in a position to convey and proceedings had been brought to make possible the conveyance of the interest of Mrs. Scoville. The provisions that plaintiff was not to pay interest on the deferred payment, was to pay all taxes subsequent to the year 1943, was to have immediate possession of the land, and was to receive the landlord's share of the wheat then planted on the land all indicate an intent to perform without unreasonable delay. Plaintiff here accepts the advantage of no payment of interest on the purchase price. After he obviously knew of Scoville's determination not to perform, plaintiff acquiesced in that decision by not demanding possession or rents during the almost five-year period that elapsed between the signing of the contract and the institution of this action. Clearly if the contract was in force, plaintiff was entitled to possession and rents from the land during Mr. Scoville's life and thereafter—and yet it affirmatively appears that he took no action to collect and did not even claim these rights during that period. The retaining of rents and possession by Mr. Scoville and later by the executor of his estate was clearly inconsistent with material provisions of the contract, and just as clearly plaintiff acquiesced in those acts.

The only thing we find that plaintiff is shown to have done with reference to this contract is to have refused the return of the check for $500 at some time early in the period after the notice that Mr. Scoville would not perform and during Mr. Scoville's lifetime. He is also shown at one time to have looked at the contract in the county records.

There is evidence that the $500 check was delivered to Mr. Scoville and by him left with the attorney and tendered back to plaintiff who refused it. It is also in

evidence that the attorney at least thereafter considered it as held in escrow. While plaintiff here contends that it was a payment, yet his position in this litigation negatives that contention for he pleaded a tender of $1,600 to Orpha Cross on September 23, 1948, and by letter tendered that sum as "the full amount due."

Although the record shows that plaintiff was present in court during the trial of this case, he was not called as a witness. He left the matter for the trial court to determine from the evidence of others. He suggests here that his delay in bringing the action for specific performance was due to the litigation over the will and the necessity for a determination in that proceeding as to Mr. Scoville's competency. This contention overlooks two things. There was approximately a two-year period between the date of the contract and the death of Mr. Scoville. As has been pointed out, during that period plaintiff took no action to secure authority to have Mrs. Scoville's interest conveyed. He made no demand for performance. He took no steps to recover rent or possession. In fact, early in that period he had acquiesced in the refusal of Mr. Scoville to perform and had abandoned his rights under the contract. During that two-year period it is not shown that anyone questioned Mr. Scoville's competency to enter into the contract, unless the plaintiff himself questioned it in his own mind. It is in evidence in this case that he appeared as a witness for the contestants in the will case and there expressed grave doubts as to the competency of Mr. Scoville at the time he entered into this contract. Of course, whatever rights plaintiff had came into existence prior to Mr. Scoville's death and the courts were open to him during all of the five-year period. We do not decide that by the delay he is barred of a remedy but we do consider it as a circumstance in determining the question of abandonment. Edmiston v. Hupp, 98 Neb. 84, 152 N. W. 296.

We think it clear and without material dispute that

this contract was abandoned by the parties in the early months after its execution, and that accordingly the trial court did not err in denying specific performance. We deny it here.

This determination renders unnecessary a decision of other assignments of error.

The judgment of the trial court is affirmed.

AFFIRMED.