Muchow *v.* Schaffner et ux., Appellants.

414

Argued November 16, 1956. Before Rhodes, P. J., Hirt, Ross, Gᵁᴺᵀʜᴱᴿ, Wright, Woodside, and Ervin, JJ.

*Max U. Applebaum,* for appellants.

*Patrick J. Corr,* with him *Donald R. Tomlinson,* for appellee.

OPINION BY ERVIN, J., January 17, 1956:

This is an action of scire facias upon a mechanic's lien brought by Fred Muchow, a contractor, against Gus J. Schaffner, Jr., and Dorothy R. Schaffner, his wife, to recover for labor and materials actually expended in the construction of a building on the property of the defendants. After trial in the Court of Common Pleas of Allegheny County the jury returned a verdict for the plaintiff for the full amount of his claim, including interest, totalling $2,073.28. During the trial, at the conclusion of the plaintiff's case, the defendants' motion for compulsory nonsuit was refused. Defendants' motions for judgment n.o.v. and for a new trial were overruled by the court below and this appeal followed.

We will not consider the contention of defendants that the lower court committed error in refusing the motion for compulsory nonsuit. It has long been settled law in this Commonwealth that no appeal lies from the refusal to grant a compulsory nonsuit. *Carroll v. Hannon,* 289 Pa. 65, 137 A. 127; *Shapiro v. Phil-*

*adelphia et al.,* 306 Pa. 216, 159 A. 29; *Morgan v. Duquesne Boro.,* 29 Pa. Superior Ct. 100.

In reviewing the record we will consider the facts and the reasonable inferences therefrom in a light most favorable to the plaintiff as we are required to do: *Harris v. DeFelice,* 379 Pa. 469, 109 A. 2d 174; *Dauphin Deposit Trust Company v. Lumbermens Mutual Casualty Company,* 171 Pa. Superior Ct. 86, 90 A. 2d 349. Thus viewed, the following factual situation is presented. On January 9, 1950, the plaintiff and Gus J. Schaffner, Jr., one of the defendants, entered into a written agreement providing for the erection of a two-story concrete-block building by the plaintiff on the premises of the defendants. The agreement provided, inter alia, that plaintiff would, in the construction of the building, dig 3 feet for the footer, that all walls were to be 33 courses high above the footer and there were to be 6 pilasters of hard common brick 16 x 16 from footer to top beams. The building was to be approximately 30 feet long and 27 feet 8 inches wide with ceilings to be 10 feet. The agreement also provided "All extra work to be paid for at the rate of $1.50 per hr. plus cost of material." The price agreed upon for the job was $2,737.00. The plaintiff commenced work on the construction of the building and shortly after excavation was begun he concluded that the ground would not support the building with a footer only three feet deep and that it would be necessary to dig deeper to properly place the footer. Plaintiff testified he called this condition to the attention of the defendant, Gus J. Schaffner, Jr., and that the following conversation took place between him and Schaffner: "We went three feet and I called Gus and I said, 'Gus, we will have to go deeper for a footer. That ground won't hold the building.' He said, 'That's all right, go ahead.' I said, 'It will be extra work ac-

cording to the contract.' He said, 'That's all right. Don't worry about extra work. We are going to have extra work all the way through on this building. Don't worry about it. I'll pay for it whatever it is. Forget the contract.' And I said, 'All right'. And we did that work." This testimony was corroborated by the testimony of one of the workmen. Plaintiff completed the erection of the building which, when finished, was materially different from the structure contemplated in the original written agreement. Plaintiff thereupon demanded payment on the basis of an oral contract on a time and material basis and when defendants refused payment he filed his claim in the total amount of $4,351.07 representing labor charges in the amount of $1,975.50 and charges for materials totalling $2,-375.57. In his claim plaintiff made no allowances for payments received but during the trial he acknowledged that he had received certain payments and that some of the materials had been paid for by the defendants. The total of these payments was $2,724.97, leaving a balance due plaintiff, according to his contention, of $1,626.10 with interest from March 11, 1950. The defendants contend the total charges on the basis of the written agreement, would amount to $2,737.00 plus their estimate of extras of $273.45 or a total charge for the building of $3,010.45. Defendants also asserted a counterclaim for $943.53 on the basis of additional expenditures they were required to make in order to complete the building after plaintiff refused to do so.

The pivotal issue here involved can be stated as follows: Was the original written agreement of the parties providing for the construction of a building at a fixed price of $2,737.00 with provision for payment of extra work at a stipulated hourly rate of $1.50 plus cost of materials superseded by an oral agreement providing for payment on a time and material basis?

The parties to a contract may rescind it by making a new contract inconsistent therewith. *Klugh Estate*, 362 Pa. 166, 66 A. 2d 822. Moreover, "The agreement to rescind or modify need not be express. Mutual assent to abandon a contract, like mutual assent to form one, may be inferred from the attendant circumstances and conduct of the parties." Williston on Contracts (Rev. Ed.), Vol. VI, §1826. Section 408, Restatement of Contracts, states: "A contract containing a term inconsistent with a term of an earlier contract between the same parties is interpreted as including an agreement to rescind the inconsistent term in the earlier contract. The parties may or may not at the same time agree to rescind all the other provisions of the earlier contract. . . ." As stated by Judge RENO *in Priester v. Milleman,* 161 Pa. Superior Ct. 507, 516, 55 A. 2d 540: "The parties to a written contract may always show that it was subsequently abandoned in whole or in part, modified, changed or a new one substituted, and this may be established by an express parol agreement or actions necessarily involving the alterations. Achenbach v. Stoddard, 253 Pa. 338, 98 A. 604. The agreement to modify need not be expressed in words; it may be inferred from acts and declarations of the parties inconsistent with the original contract. Weldon and Kelly Co. v. Pavia Co., 354 Pa. 75, 46 A. 2d 466." In the instant case, when confronted with the impossibility of erecting the building with footers three feet deep, the defendant stated to the plaintiff—"Forget the contract." Ellis Van Newkirk, one of the workmen, also testified that defendant told plaintiff "Forget the contract. I told you when you started working for me that I wanted the building done, a good building—you would get paid for all the material and time it took to build this building. Forget about the contract." These unequivocal declarations were not made

solely in reference to the provision in the written agreement calling for footers three feet in depth but in apparent contemplation of many other changes anticipated by the defendant who also stated—"We are going to have extra work all the way through on this building." His prophetic accuracy is fully substantiated by the fact the completed structure was materially different from that contemplated by the written agreement. The extent of the changes made during the course of construction is summarized in the opinion of the court below, as follows: "Among other things the building is one-third higher than one originally contemplated by written agreement; the second floor wall is reinforced by steel beams instead of brick pie lasters [pilasters], which necessitated the extra cutting of blocks and extra time in laying them; the footer in some places is nine (9) feet deep instead of the contemplated three (3) feet." Considering the express declarations of the defendant to "Forget the contract", his promise to pay for all the material and time it took to complete the building, and the extent of the actual changes in the completed structure in comparison to the building contemplated under the terms of the written agreement, the jury properly concluded that the parties intended to abandon the written agreement and enter into a new agreement providing for payment on a time and materials basis. The verdict of the jury must be sustained.

Defendants also contend that the plaintiff cannot recover because the action has not been brought by the real parties in interest in violation of Pa. R. C. P. 2002 which requires that ". . . all actions shall be prosecuted by and in the name of the real party in interest, without distinction between contracts under seal and parol contracts." The basis of this contention is that the plaintiff is not the real party in interest because plain-

tiff and his workers operated as a partnership and all should have been joined as parties plaintiff in this proceeding. In support of their conclusion that plaintiff and his workers constituted a partnership, defendants rely on the testimony of plaintiff that he and the workmen pooled their labor in constructing the building and that under the arrangement each was entitled to $1.50 per hour for labor contributed and a share of the net profits. Defendants contend this arrangement together with the fact that plaintiff did not make deductions from wages for social security or unemployment compensation benefits and did not carry workmen's compensation insurance conclusively establish the existence of the partnership. Under the provisions of the Uniform Partnership Act[1] a partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." Among the rules applicable to the determination of whether a partnership exists the Act also provides in §7, subparagraph 4: "The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, *but no such inference shall be drawn if such profits were received in payment*: (a) . . . (b) *As wages of an employe* or rent to a landlord, . . .". (Emphasis added) The testimony clearly refutes the claim of defendants that plaintiff and his fellow workers constituted a partnership. Plaintiff testified ". . . we were doing that job because in the Winter time we were slow, things were slow, and blocklayers can't work steady and we only work when weather permits and we didn't have nothing to do and that's the reason we took this job, thinking it would take us through the Winter." This job was at most a joint enterprise relating to a single transaction in contrast with a partnership association which connotes a more or less gen-

---

[1] Act of March 26, 1915, P. L. 18, par. II, §6, 59 PS §11.

eral and continuing association for business purposes. *Slingluff v. Dennis,* 376 Pa. 91, 101 A. 2d 755. Moreover, there was no profit to share. The plaintiff received $1,500.00 which he paid out as wages during the course of the construction and the balance now claimed includes $475.50 due the workers computed at their regular rate of $1.50 per hour. This clearly precludes any assertion of a partnership relation because the plaintiff and workers on this job received only wages as such and not as profit from the job. And if there were profits received as wages the Act, as noted above, clearly states that no inference could be drawn therefrom that the recipient was a partner in a business. Furthermore, "In ascertaining whether a partnership exists, it is necessary to consider all of the attending facts and circumstances. . . ." *Northampton Brewery Corp. v. Lande,* 138 Pa. Superior Ct. 235, 10 A. 2d 583. The only remuneration received and claimed by plaintiff and his workers was in the form of wages computed on the basis of $1.50 per hour, much less than the prevailing rate in the area at the time this job was undertaken. Under the circumstances the indispensable requisites of a partnership—co-ownership of a business and the sharing of profits—are not present.

Judgment affirmed.