409 A.2d 83

Alex J. CHURILLA and Grayce D. Churilla, Co-Administrators of the Estate of Carl J. Churilla, deceased, on behalf of the Estate of Carl J. Churilla, deceased, and Alex J. Churilla and Grayce D. Churilla, Co-Administrators of the Estate of Carl J. Churilla, deceased, on behalf of the next of kin of the said Carl J. Churilla

v.

Robert BARNER, Appellant,

v.

ESTATE of Joel RUBENSTEIN.

Superior Court of Pennsylvania.

Argued Oct. 24, 1978.

Filed Aug. 29, 1979.

Andrew M. Schifino, Pittsburgh, for appellant.

Kirby Lee Boring, Pittsburgh, for appellees Churilla.

No appearance on behalf of Estate of Joel Rubenstein.

Before PRICE, HESTER and WATKINS, JJ.

PRICE, Judge:

In their complaint initiating this action, appellees, the parents of Carl J. Churilla, alleged that their son was killed in an automobile accident caused by the negligence of appellant.[1]  Pursuant to a non-jury trial conducted on May 26, 1977, judgment was entered for appellees in the amount of $3,000 on the survival action, and $47,000 on the wrongful death action.  For the reasons stated herein, we reverse the judgment of the trial court.

The sole testimony presented by appellees relating the circumstances of the crash was provided by one Michael Cervo.[2]  Mr. Cervo testified that on August 18, 1973, he was visiting his parents, whose residence fronts on the southern berm of Route 30 in North Versailles.  At a point in front of the Cervos' home, Route 30 is a four lane highway accommodating east and westbound traffic.  The east and westbound lanes are separated by a double solid line, and the road is set on a fairly level plain.  Directly opposite the Cervo property, on the northern berm of the highway, is a hillside and a driveway leading to a J. C. Penney warehouse.  There are street lights illuminating the section of the roadway immediately in front of the residence.

While visiting, Mr. Cervo was sleeping in a second floor bedroom.  Three feet from his bed was a window overlooking Route 30.  The window was up with a shade pulled halfway down and curtains hanging on the side.  A silver screen covered the bottom portion of the window.  Some

1.  Joel Rubenstein, whose estate was joined as an additional defendant, was alleged to have operated the automobile in which appellees' decedent presumably had been riding.  At trial, no testimony was presented indicating any liability on his part.

2.  Mr. Cervo's testimony was accepted by the court in the form of a deposition.  Appellant exercised his opportunity to cross-examine the witness, and no objection is raised as to the procedural aspects of the deposition.

foliage and trees were present in the front of the yard, but they did not obscure a view of the highway from the window.

At approximately 3:30 that morning, Mr. Cervo was awakened for some unexplained reason. He sat up in bed, and as he was approaching an upright position, heard a crash outside his window. He immediately turned to the window and observed [3] a Volkswagon Karmann Ghia and a Pontiac "united in a head-on-position", both in the eastbound lanes of Route 30. The two cars were joined at their respective right front sections, with the Volkswagon pointing northeast and the Pontiac facing southwest. At the initial moment of observation, the Volkswagon was located in the eastbound lane closer to the southern berm, while the Pontiac was positioned partially in each eastbound lane; both vehicles were locked in the beginning of a clockwise rotation moving linearly westward on Route 30.

After observing this scene for a second, during which the cars moved perhaps thirty (30) feet, Mr. Cervo turned his head from the window and spoke to his brother, who was sharing the room that evening. When he turned back to the road, he leaned out the window and noted the cars at rest some 125 feet west of the point of original observation. The Volkswagon ended its spin against the northern berm facing in a westerly direction, while the Pontiac straddled the double center line. Mr. Cervo then dressed and went outside the house to survey the scene. During his inspection, he could discover no skid marks, but did observe that the right front portions of both cars were damaged.

At the conclusion of appellees' trial testimony, appellant elected to present no evidence, but instead moved for a compulsory non-suit. Subsequent to a study of Mr. Cervo's deposition, this motion was denied by the trial court and the aforementioned judgment entered. Appellant filed timely post-trial exceptions assigning as error the court's failure to

3. Having just awoken, Mr. Cervo was not wearing his glasses throughout the episode, although he admitted that he required them for night driving.

grant the motion.[4] These were denied, and appellant now renews that argument.

Preliminarily, although the exceptions were submitted in accordance with Pa.R.C.P. No. 1038(d), it has long been settled law in this Commonwealth that no appeal lies from the refusal to grant a compulsory non-suit. *Shapiro v. Philadelphia*, 306 Pa. 216, 159 A. 29 (1932); *Carroll v. Hannan*, 289 Pa. 65, 137 A. 127 (1927); *Muchow v. Schaffner*, 180 Pa.Super 413, 119 A.2d 568 (1956); *Hoover v. Paterni*, 140 Pa.Super. 211, 13 A.2d 914 (1940). Nevertheless, the thrust of appellant's argument is that the court's decision was contrary to the weight of the evidence, and in its opinion, the court below treated the question as being addressed to the weight of the evidence. We will do likewise.[5]

It is hornbook law that a plaintiff in a negligence action has the burden of proving by a fair preponderance of the evidence that the defendant was negligent, and that the negligence was the proximate cause of the accident. *Kester v. Rutt*, 439 Pa. 546, 266 A.2d 713 (1970); *Cwiakala v. Paal*, 427 Pa. 322, 235 A.2d 145 (1967); *Stimac v. Barkey*, 405 Pa. 253, 174 A.2d 868 (1961); Harper and James, The Law of Torts § 19.1 (1956). The mere happening of an accident or injury does not raise an inference or presumption of negligence, nor even make out a prima facie case of negligence. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978); *Lavely v. Wolota*, 253 Pa.Super. 196, 384 A.2d 1298 (1978); *Agostino v. Rockwell Manufacturing Co.*, 236 Pa.Super. 434, 345 A.2d 735 (1975). Rather, the plaintiff must produce evidence to

4. Appellant has contended, *inter alia*, that the verdict was against the weight of the evidence. Several other grounds of error were asserted in both post-trial motions and on this appeal. Because of our disposition of appellant's initial issue, these later allegations need not be discussed.

5. If this action were tried before a jury, appellant's course of action would have been to request binding instructions, and subsequent to an adverse verdict, judgment *non obstante veredicto*. In non-jury trials, no motion for judgment n. o. v. or for a new trial may be filed. Pa.R.C.P. No. 1038(d). *See Pomerantz v. Goldstein*, 71 D. & C.2d 737 (C.P. Philadelphia 1975), *aff'd*, 233 Pa.Super. 738, 339 A.2d 565 (1975) (per curiam).

support his version of the incident, *Warden v. Lyons Transportation Lines, Inc.*, 432 Pa. 495, 248 A.2d 313 (1968); *Noel v. Puckett*, 427 Pa. 328, 235 A.2d 380 (1967); theories as to what may have transpired in an automobile accident may not be employed as a substitute for such evidence. *Lithgow v. Lithgow*, 334 Pa. 262, 5 A.2d 573 (1939). This requirement is necessary and salutary, for the jury may not predicate its verdict on surmise or guess. *Smith v. Bell Telephone Company of Pennsylvania*, 397 Pa. 134; 153 A.2d 477 (1959). Of course, this does not imply that,

> "the jury may not draw inferences based upon all the evidence and the jurors' own knowledge and experiences, for that is, of course, the very heart of the jury's function. It means only that the evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the *only* one which logically can be reached." *Id.*, 397 Pa. at 138, 153 A.2d at 479–80 (emphasis in original).

Instantly, appellees presented a single witness to detail the scenario of the accident. Mr. Cervo testified as to: the topography of the highway at the scene of the accident; the direction of travel of the two vehicles in a particular lane following the crash; the final position of the vehicles; and the existence of damage to the right front portion of each automobile. Mr. Cervo observed neither the initial impact nor the direction of travel of the vehicles immediately prior to impact.[6] No mention was made of the speed of the automobiles or their respective lanes of travel

6. Appellees correctly note that in his "Complaint to Join Additional Defendant", appellant admitted that he was operating a vehicle in a westerly direction on Route 30, while the decedent was in an automobile travelling east on that same route. After reviewing the record, however, we are unable to find that these admissions were ever formally introduced as evidence. The allegations of a pleading do not constitute part of a trial record unless made part of it by offer and admission or court direction. *Volpe v. Atlantic Crushed Coke Co.*, 208 Pa.Super. 11, 220 A.2d 393 (1966); 5 Standard Pennsylvania Practice 459 (1958).

at the time of the collision.[7] The witness' testimony related only to that small period of time following the initial impact and the final resting place of the vehicles.

A comparison with *Kester v. Rutt, supra,* indicates that the quantity of evidence here adduced was insufficient to sustain the judgment. *Kester* involved a collision between the plaintiff's pickup truck and the defendant's bus on an east-west two lane highway. The plaintiff presented two witnesses. The first testified that on the night of the accident, he heard the squeal of brakes on the highway and got a "quick glance" at the tail lights of a passing vehicle before hearing a loud crash. Although the tail lights appeared to be moving in an easterly direction, he did not observe the actual collision. Upon investigating the scene, he discovered two sets of skid marks; one starting near the front of his home and extending approximately 180 feet in the eastbound lane, and another set of "dual wheel" marks to the east of the first set crossing the center line of the highway at either a north-south or south-north angle. The second witness merely corroborated the existence of the first set of skid marks.

The defendant's bus came to rest completely off the south side of the highway (eastbound lane), pointed in a southwesterly direction. The plaintiff's pickup truck rested partially off the eastbound lane on the south berm, headed in a southeasterly direction, approximately 180 feet to the east of the bus's final position. At the close of the plaintiff's testimony, a motion for non-suit was granted which the lower court subsequently refused to remove. On appeal, our supreme court analyzed the evidence thusly:

"The evidence presented by plaintiffs established only *(1) the nature of the highway at the scene of the accident and the scattered debris; (2) the collision of two vehicles;*

7. If appellant had indeed been observed driving on the wrong side of the road, a prima facie presumption of negligence would have arisen. *Platts v. Driscoll*, 245 Pa.Super. 235, 369 A.2d 381 (1976); *Taylor v. Fardink*, 231 Pa.Super. 259, 331 A.2d 797 (1974); *Berry v. Lintner*, 226 Pa.Super. 562, 323 A.2d 253 (1974).

*(3) the final position and direction of the damaged vehicles; and (4) the existence of skid marks on the highway.*

Under the facts hereinbefore stated, it is clear that plaintiffs failed to prove that defendant was negligent and that his negligence was the proximate cause of plaintiffs' injuries and death—any jury verdict for plaintiffs would have been a mere conjecture or guess."

*Kester v. Rutt, supra* 439 Pa. at 549–50, 266 A.2d at 714 (emphasis added).

The facts present, and absent, in the instant case are similar to those of *Kester,* and any verdict here equally would be the result of conjecture and guess.

The judgment of the trial court is therefore reversed.