483 A.2d 474

George R.H. ELDER

v.

Adam ORLUCK

v.

BOROUGH OF HARRISVILLE, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 28, 1984.

Filed Sept. 14, 1984.

Reargument Denied Nov. 26, 1984.

Petition for Allowance of Appeal Granted April 10, 1985.

---

330

David B. Fawcett, Jr., Pittsburgh, for appellant.

Richard B. Tucker, III, Pittsburgh, for Elder, appellee.

Louis C. Long, Pittsburgh, for Orluck, appellee.

Daniel M. Berger, Pittsburgh, Carol Nelson Shepard, Philadelphia, on the brief, for the Pennsylvania Trial Lawyers' Association, amicus curiae.

Before BROSKY, DEL SOLE and MONTGOMERY, JJ.

## OPINION

DEL SOLE, Judge:

This appeal arises from an action instituted by George R.H. Elder (Elder) against Adam Orluck (Orluck) to recover for personal injuries suffered when the motor vehicle which he was driving was "rear-ended" by a motor vehicle driven by Orluck. The Appellant is the Borough of Harrisville

(Harrisville) which was joined as an additional defendant by Orluck.

The motor vehicle accident in question occurred in the afternoon of Memorial Day, May 30, 1977 on Route 8, just outside the borough limits of Harrisville. Route 8 is a state highway which runs in a north-south direction through Harrisville. On the above day, Harrisville held its annual Memorial Day parade. Harrisville had secured permission from the Department of Transportation to close a portion of Route 8 located within the borough for approximately one hour in order to stage the parade. The record indicates that the permit was issued with the express condition that Harrisville would be responsible for "posting, policing, and maintenance of all highways and/or streets used as a detour so that no inconvenience would occur to the traveling public". There was at least one state policeman present at the parade site, however the record reveals that the policeman only led the parade and did not actively participate in traffic control.

Immediately prior to the start of the parade, at approximately 1:30 p.m., the Harrisville police completely halted all southbound traffic on Route 8 at a point within the borough limits so that parade units could enter onto the parade route. The point of the traffic stoppage was just before the designated parade detour turn-off. Traffic was then allowed to proceed onto the detour route after the stoppage which lasted for about five to ten minutes. The record further reveals that the stoppage of traffic caused some back-up of traffic on Route 8 although there was some dispute over the extent of said back-up.

It was apparently a short time after the traffic stoppage that the accident in question occurred. While the testimony of the two drivers, Elder and Orluck, conflicts on the facts surrounding the accident, it was never denied that Orluck's vehicle struck the rear-end of Elder's vehicle. Elder testified that he was traveling southbound on Route 8 towards Harrisville on the day of the accident. He stated that as he neared a hill on Route 8 just outside the Harrisville borough

limits, he observed a truck traveling directly in front of his vehicle begin to abnormally slow near the crest of the hill. Elder then testified that he also began to slow down as he neared the crest of the hill and that he was struck from behind by another motor vehicle as he had just cleared the crest of the hill. Soon after, Elder learned that it was Orluck's vehicle that had struck his vehicle. Elder's basic contention against Orluck at trial was that Orluck had been negligent in failing to operate his motor vehicle so as to stop it within an assured clear distance.

Orluck's defense against Elder at trial was that the accident was in whole or at least in part due to the fact that the tail lights on Elder's vehicle were inoperable at the time of the accident. Orluck differed with Elder as to the time that he believed the accident occurred on the day in question. Elder testified that the accident occurred in the early afternoon, a fact confirmed by the other witnesses at trial. Orluck believed that the accident had occurred in the late afternoon. In addition, Orluck could not recall seeing a woman who testified at trial that she was attempting to signal traffic to slow at the time of the accident. Elder testified that he had seen the woman immediately prior to the accident.

Both Elder and Orluck contended at trial that the complete stoppage of traffic by Harrisville on Route 8 created a dangerous condition for traffic, which was a concurrent cause of the accident. The two parties contended that the accident could have been avoided with proper traffic planning. They argued that it would have been entirely feasible to have the parade units enter onto Route 8 at a point beyond the detour turn-off which would have eliminated the need for a traffic stoppage and consequently eliminated the resulting traffic back-up. It was also argued that with or without the traffic stoppage, Harrisville should have warned motorists approaching the hill on Route 8 that a parade was taking place so that the motorists could exercise more care when entering the borough. Elder and Orluck

argued that flares, signs or even a policeman could have been used in this regard.

Harrisville's defense at trial was that the accident was caused solely through the negligence of one or both of the drivers and that its actions were not negligent. Alternatively, Harrisville argued that even if it had acted negligently its actions were not the legal cause of the accident.

The trial court submitted the case to the jury which returned a verdict for Elder in the amount of $250,000 and apportioned fault as follows: Elder—25%, Orluck—60%, and Harrisville—15%. The trial court then molded the verdict based on the jury's findings of comparative fault and later molded the verdict a second time to include delay damages. Harrisville then filed its own motion to mold the verdict to deny Elder any recovery from Harrisville on the grounds that Elder was found more negligent than Harrisville. The trial court denied that motion and also subsequently denied Harrisville's motion for judgment notwithstanding the verdict and/or new trial. Judgment was entered on the verdict and Harrisville filed this timely appeal. Orluck did not appeal although he has filed a brief with this Court.

Harrisville advances the following arguments for reversal of the verdict below: 1) The trial court erred in denying Harrisville's motion for compulsory nonsuit and directed verdict; 2) The trial court erred in not submitting Harrisville's crossclaim against Orluck to the jury; 3) The trial court erred in not charging the jury on superseding and intervening cause and active-passive negligence; 4) The trial court erred in advising the jury that Elder had been awarded payment of all his medical expenses in connection with the accident and $15,000 in work loss benefits; 5) The trial court erred in its charge on the assured clear distance and sudden emergency doctrines; 6) The trial court erred when it instructed the jury that Harrisville had the duty to regulate the traffic caused by the parade, as a matter of law; 7) The trial court erred in charging the jury on the issue of the aggravation of a pre-existing condition suffered by Elder; 8) The trial court erred in denying Harrisville's

point for charge on the duty of a driver to control his speed as he approaches the crest of a hill; and 9) Elder is barred from any recovery against Harrisville based on the language of the Pennsylvania Comparative Negligence Act (hereinafter "the Act") because the Act prohibits a more negligent plaintiff from recovering against a less negligent defendant.

The first issue raised by Harrisville pertains to the alleged error of the trial court in its denial of the motions for compulsory nonsuit and directed verdict. Harrisville contends that the evidence fails to show that it was negligent in any way with regard to the accident in question and that a nonsuit or directed verdict should have been granted accordingly. In support, Harrisville cites the testimony of Elder and Orluck and concludes that it was not negligent because neither driver explicitly stated that the traffic back-up was a contributing factor to the accident. Our review of the entire record shows this argument to be meritless.

■ We begin by noting that the issue as framed by Harrisville is not a proper subject for disposition on appeal. It is well settled that the trial court's failure to grant a compulsory nonsuit is not appealable. *Churilla v. Barner*, 269 Pa.Super. 100, 409 A.2d 83 (1979); *Muchow v. Schaffner*, 180 Pa.Super. 413, 119 A.2d 568 (1956). Similarly, we find that the trial court's refusal of a point for binding instructions, or directed verdict, is also not appealable. What is appealable is the trial court's order denying a motion for judgment notwithstanding the verdict. Although Harrisville has failed to focus its appellate argument in terms of the j.n.o.v. issue, we note that the trial court opinion treats the issue in the context of its denial of Harrisville's motion for judgment notwithstanding the verdict. Accordingly, we will review Harrisville's first argument as alleging error in the denial of its motion for judgment notwithstanding the verdict.

■ It is well settled that in reviewing the trial court's denial of a motion for judgment notwithstanding the verdict, we must view the evidence in a light most favorable to the verdict winner, resolving all doubts in his favor and giving him the benefit of every reasonable inference arising from the evidence. *Feld v. Merriam,* 314 Pa.Super. 414, 461 A.2d 225 (1983); *McDevitt v. Terminal Warehouse Co.,* 304 Pa.Super. 438, 450 A.2d 991 (1982). It is also well settled that judgment notwithstanding the verdict may only be granted in a clear case when the facts are such that no two reasonable men could fail to agree that the verdict was improper. *Walsh v. Pennsylvania Gas & Water Co.,* 303 Pa.Super. 52, 449 A.2d 573 (1982). Our review of the record in light of the above standards shows that the verdict was supported by ample evidence and thus the refusal of judgment notwithstanding the verdict was proper.

■ In its brief, Harrisville exclusively concentrates on the testimony of Elder and Orluck but ignores the testimony of other witnesses which shows there to be sufficient evidence for a jury to find that Harrisville was negligent and that its negligence was a concurrent cause of the accident. For example, there was testimony from a woman, whose residence is located near the crest of the hill in question, that she attempted to warn motorists approaching Harrisville on Route 8 of the slowdown in traffic. In addition, she testified that there were no signs or flares in the vicinity of the crest of the hill or any police officers to warn motorists that a parade was in progress. These facts were confirmed by the testimony of the Harrisville police chief and a Harrisville police officer. There is also testimony in the record regarding the stoppage of traffic and parade control. Taken as a whole, the testimony of all the witnesses, including Elder and Orluck, shows that a jury could reasonably find that Harrisville was negligent in failing to exercise ordinary care in regulating the parade traffic. Further, the testimony taken as a whole would also support a finding that Harrisville's negligence was a contributing factor to the occurrence of the accident. We

cannot say that such findings would be unreasonable in light of the record.[1]

Harrisville's second contention is that the trial court should not have refused to submit its crossclaim against Orluck to the jury. In its crossclaim, Harrisville claimed contribution or indemnity from Orluck. The record reveals that the trial court found that the jury would have been confused by the issues in the crossclaim and that there was no evidence to support a finding of indemnity in favor of Harrisville. The trial judge instructed the jury that Harrisville was either solely negligent, concurrently negligent or not negligent. In its opinion, the trial court also noted that Harrisville still has the right to seek contribution from Orluck. We agree with the trial court.

■ The standard for a finding of indemnity in a negligence case can be found in the oft cited case of *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951). Our Supreme Court held in *McCabe* that a person is entitled to indemnity if that person, without active fault on his part, has been compelled, by some legal obligation, to pay for damages occasioned by the active negligence of another. The Court found that this standard does not relate to degree of negligence but rather to the character of the wrong which gives rise to liability. Further, the *McCabe* Court noted that there can be no indemnity between joint or concurrent tortfeasors. Since Harrisville has not been denied its right of contribution, the issue becomes whether the record would support a finding that Harrisville's liability was based solely on some legal obligation between it and Orluck. We hold that no such finding can or could be made.

■ The record is devoid of any evidence showing there to be any type of legal obligation between Harrisville and Orluck, and Harrisville has not expressly set forth any facts

---

1. We note that this result may have differed had the incident which gave rise to the cause of action herein occurred after enactment of either the Political Subdivision Tort Claims Act, 53 P.S. § 5311.101 et seq. (repealed) or Sections 8541–64 of the Judicial Code, 42 Pa.C.S.A. §§ 8541–64. These acts created general governmental tort immunity with certain specified exceptions to that immunity.

to support such a finding. The contention at trial was that Harrisville was actively negligent with regard to the accident and evidence was introduced in support of that argument. Harrisville presented its own evidence to counter that position. No evidence was ever offered by Harrisville which would have supported a finding of indemnity in its favor. The instant case is thus dissimilar to those cases in which indemnity has been permitted, *See Burbage v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 249 A.2d 563 (1969); *Builders Supply Co. v. McCabe, supra; O'Malley v. Peerless Petroleum, Inc.*, 283 Pa.Super. 272, 423 A.2d 1251 (1980). In all the above cited cases there was liability imposed on a party solely because of another's active negligence and based on some legal obligation between the two parties. Such is not the case with Harrisville because its fault was based solely on its own actions in parade traffic control. Harrisville was not compelled to pay damages because of any legal relationship between it and Orluck. Thus, the trial judge was correct in not submitting the indemnity issue to the jury. The record shows that Harrisville fully and vigorously defended against the allegations of its negligence.

■ Harrisville's next argument is that the trial judge erred when he declined to charge the jury on the doctrines of superseding and intervening cause and active-passive negligence. This argument is also without merit. First, the record reveals that the attorney for Harrisville requested that the trial judge give an instruction on active-passive negligence. However, no specific point for charge was submitted by Harrisville on this issue. It is well settled that in order to preserve an issue for appellate review the complaining party must submit a specific point for charge or make a timely objection the charge as given. *Broxie v. Household Finance Co.*, 472 Pa. 373, 372 A.2d 741 (1977). Thus, we decline to review the specific issue raised on active-passive negligence. Conversely, the issue on superseding and intervening causation was properly preserved for our review, however, we find that the trial court proper-

ly denied the specific points for charge requested by Harrisville.

■ The record reveals that Harrisville submitted specific proposed points for charge on superseding and intervening cause. The trial court denied said points for charge finding that the charge as given to the jury on the substantial factor test for proximate cause was sufficient to cover the concept of superseding and intervening causation even though that specific concept was not expressly mentioned. The trial court reasoned that the question of superseding and intervening causation is essentially one of proximate cause and thus a proper charge on proximate cause would permit the jury to find superseding and intervening causation by the finding that the act of a defendant was not a substantial factor in·causing plaintiff's injuries. In addition, the court found that an additional specific charge on superseding and intervening cause would confuse the jury. We have reviewed the charge and found it to be accurate. We have also reviewed the extensive and thorough discussion of this issue in the trial court opinion and find that the court correctly disposes of this issue. Accordingly, this argument of Harrisville is dismissed.

Harrisville's fifth issue concerns its contention that the trial court's charge on the assured clear distance rule and the sudden emergency doctrine impermissibly mixed the two standards and thus was error. Harrisville argues that the record does not support a charge on the sudden emergency doctrine and that it was error to even mention the concept of emergency to the jury.

■ It is well settled that where the accuracy of a charge is at issue, an appellate court must look to the charge in its entirety against the background of the evidence to determine whether or not error was committed and whether that error was prejudicial to the complaining party. *Berry v. Friday,* 324 Pa.Super. 499, 472 A.2d 191 (1984); *Slavish v. Ratajczak,* 277 Pa.Super. 272, 419 A.2d 767 (1980). We must review the charge in this light.

In his charge to the jury, the trial judge properly instructed the panel on the assured clear distance rule citing section 3361 of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S. § 3361, at which the rule is codified. Section 3361 provides that a driver must operate his vehicle so as to stop within an assured clear distance ahead. That section also provides that a driver shall operate his vehicle at a safe and appropriate speed when approaching a hill crest. This Court has recognized that the above cited rule is one of speed. *Turner v. Smith,* 237 Pa.Super. 161, 346 A.2d 806 (1975).

However, the record reveals that the trial court also instructed the jury that a driver would not be negligent for stopping within an assured clear distance if confronted with an emergency. In this regard, the trial judge stated that the assured clear distance rule has no application when things suddenly dart out in front of a driver. It was the introduction of this concept that Harrisville claims was error.

■■■■ The sudden emergency doctrine is a defense available in a negligence action to a driver of a motor vehicle who suddenly and unexpectedly finds himself confronted with a perilous situation that permits no opportunity to assess the danger and respond appropriately. *Chiodo v. Gargloff & Downham Trucking Co.,* 308 Pa.Super. 498, 454 A.2d 645 (1983); *Carpenter v. Penn Central Transportation Co.,* 269 Pa.Super. 9, 409 A.2d 37 (1979). The case law in this Commonwealth indicates that the sudden emergency doctrine and the assured clear distance rule are mutually exclusive points of law and that in a given factual situation it is error to charge on both doctrines. *Sullivan v. Wolson,* 262 Pa.Super. 397, 396 A.2d 1230 (1979); *Brown v. Schriver,* 254 Pa.Super. 468, 386 A.2d 45 (1978). This is based on the rationale that the assured clear distance rule applies to essentially static or static objects, including vehicles moving in the same direction, while the sudden emergency doctrine applies only to moving instrumentalities thrust into a driver's path of travel. *Brown v. Schriver, supra.* However, there is case law for the proposition that

it is proper for the court to charge on both points of law if the facts do not conclusively establish the existence of a sudden emergency situation. *Potenburg v. Varner*, 284 Pa.Super. 19, 424 A.2d 1370 (1981).

A reading of the charge reveals that while the trial court did not use the exact term "sudden emergency", it is evident that the essence of the doctrine was conveyed to the jury. To this extent we find that the trial court should not have mentioned the concept of emergency because there is no evidence in the record to support a finding of such. Orluck's defense at trial was not that he was confronted with an object darting in front of his vehicle, but rather that Elder's tail lights were inoperable. Thus, the record fails to show a need for a charge on the sudden emergency doctrine.

■ Despite this error by the trial court we are unable to find and Harrisville has failed to show, any specific prejudice resulting from the charge in question. Harrisville's allegations of prejudice are merely conclusory and Harrisville has failed to cite any portion of the record proving the existence of such. In addition, a review of the actual jury verdict reveals that the jury did not consider or reject the concept of emergency because Orluck was found to be more negligent than Elder and Harrisville combined. Thus, to the extent the sudden emergency doctrine was mentioned it was error, but not error requiring a new trial.

■ The next issue raised by Harrisville is that the trial court erred in charging the jury that Harrisville had the duty of regulating the parade traffic independent of any permit from the State and irrespective of the borough limits. We cannot reach this issue since again Harrisville has failed to properly preserve the issue for appellate review. The record reveals that the attorneys for Harrisville did not specifically object to the charge as given nor was any specific point for charge submitted. The issue is thus waived on appeal.

■ The eighth issue raised by Harrisville concerns the trial judge's charge on a potential aggravation of a pre-existing back condition suffered by Elder. Harrisville contends that the charge was improper since there was no evidence in the record to support such an instruction. We reject this argument because a reading of the portion of the charge in question reveals that the trial judge merely reviewed the evidence and arguments presented by Elder and Harrisville on the aggravation issue. In fact, the trial judge specifically noted that it was Harrisville which had argued that Elder's injuries would have eventually occurred despite the accident due to natural degenerative condition of diseased vertebrae in the cervical region of the spine. Elder also testified that he had had some lower back problems before the accident but that the injuries complained of were unrelated to his pre-existing condition. A close reading of the charge indicates that it was actually favorable to Harrisville because the trial court told the jury that it need not award damages to Elder for his cervical injuries if it found that the injuries would have occurred anyway because of the degenerative condition alleged by Harrisville. There was nothing in the charge that could be construed as prejudicial to Harrisville because the trial judge merely reviewed the evidence and arguments of the parties. In addition, Harrisville cannot now complain since it raised the issue at trial.

■ Harrisville next contends that the trial court erroneously denied its charge on the duty of a driver to control his speed as he approaches the crest of a hill. This argument is meritless because the record shows that the trial judge's charge fully and adequately covered the substance of the requested charge. The trial judge instructed the jury that a driver of a motor vehicle shall drive at a safe and appropriate speed when approaching the crest of a hill. A review of Harrisville's requested points reveals that they are essentially similar to the actual charge. It is well settled that a trial judge may refuse a requested point for charge when the substance of the instruction was contained

in his charge to the jury. *Perigo v. Deegan,* 288 Pa.Super. 93, 431 A.2d 303 (1981). We find such to be the case with the above issue and thus it was not error for the trial court to deny the requested points for charge.

Having disposed of Harrisville's other issues, we now reach the issue raised in this appeal concerning the interpretation of the Pennsylvania Comparative Negligence Act (the Act), 42 Pa.C.S. § 7102. Harrisville contends that in a multiple defendant case, the Act bars recovery by a plaintiff from a defendant found proportionally less negligent than the plaintiff even if the plaintiff's negligence is not greater than the combined negligence of all the defendants. Accordingly, Harrisville argues that Elder should be denied any recovery against it because it was found only 15% negligent whereas Elder was found to be 25% negligent despite the fact that the combined negligence of Harrisville and Orluck was 75%. Conversely, Elder argues, as does *amicus curiae* Pennsylvania Trial Lawyers Association (PaTLA), the Act only bars a plaintiff from recovery in any negligence case if his negligence is greater than the combined negligence of all the defendants. Elder thus contends that he can recover the full amount of the allowed damages from Harrisville because his negligence was not greater than the combined negligence of Harrisville and Orluck. This issue is one of first impression in the appellate courts of this Commonwealth.

Our discussion must begin with the text of the Act which is as follows:

(a) General Rule. In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

(b) Recovery against joint defendant; contribution. Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of causal negligence attributed to all defendants against whom recovery is allowed. The plaintiff may recover the full amount from any defendant against whom the plaintiff is not barred from any recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution.

42 Pa.C.S. § 7102.

The parties have asked this Court to interpret the above language and thus we look to the statutory provisions on the interpretation of statutes. The rules of statutory interpretations are set forth at 1 Pa.C.S. §§ 1921–1939. The section most relevant to our inquiry is section 1921 which provides:

§ 1921. *Legislative intent controls.*

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering among other matters:

1. The occasion and necessity for the statute.

2. The circumstances under which it was enacted.

3. The mischief to be remedied.

4. The object to be attained.

5. The former law, if any, including statutes upon the same or similar objects.

6. The consequences of a particular interpretation.

7. The contemporaneous legislative history.

8. Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921. We will review the Act within the above framework.

A close reading of the Act shows that it does not explicitly provide that in a multiple defendant case the negligence of the plaintiff must be compared to each individual defendant or if plaintiff's negligence is to be compared to the combined or aggregate negligence to determine if plaintiff is barred from recovery. What the Act does provide is that the plaintiff's negligence will not bar his recovery "where the negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought". The issue then becomes whether the Act's language can be clearly and unambiguously read to either interpretation presented by the parties in this appeal.

Harrisville argues in favor of the "individual" approach contending that the phrase "defendant or defendants" was merely a recognition by the legislature that cases frequently involve more than one defendant. Harrisville argues that the proper interpretation of the Act is found by reference to section (b). Harrisville asserts that the legislature intended to create a clear distinction in section (b) between defendants "against whom recovery is allowed" and those defendants "against whom plaintiff is barred from recovery". Harrisville argues that the latter phrase was placed in the Act to encompass the classes of defendants against whom plaintiff could not recover, primarily those defendants found less negligent than plaintiff. To hold otherwise, Harrisville contends, would render that language meaningless because there is no other significant class of defendant to which it is applicable. Harrisville concludes that this language clearly indicates that a defendant found less negligent than the plaintiff in a multiple defendant case cannot be compelled to pay damages to the plaintiff even if the plaintiff's negligence was not greater than that of all the defendants.

Elder and PaTLA contend that the Act clearly contemplates the use of the "combined" or "aggregate" approach in multiple defendant cases and that a plaintiff can still recover from a proportionally less negligent defendant so long as the plaintiff's negligence does not exceed the combined negligence of all the defendants. Elder and PaTLA contend that the use of the plural by the legislature in the phrase "where the negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought" clearly supports the "combined" approach. In response to Harrisville's argument on section (b) of the Act, Elder and PaTLA argue that there were classes of defendants when the Act was enacted against whom plaintiff was barred from recovery which have since been abolished. One example cited is interspousal immunity which was abolished in *Hack v. Hack,* 495 Pa. 300, 433 A.2d 859 (1981). They also contend that the most simple interpretation to be placed on the language relied upon by Harrisville is that it applies to those defendants from whom plaintiff seeks recovery but are found not negligent. Elder and PaTLA conclude that there is nothing in the Act to clearly show that the legislature intended to bar a plaintiff's recovery from a proportionally less negligent defendant in a multiple defendant case when the plaintiff's negligence was not greater than the combined negligence of all the defendants. Rather, they conclude that the Act clearly favors the "combined" approach.

As we have noted, our Act is not explicit on whether the "individual" or "combined" approach is to be used unlike other jurisdictions which have expressly adopted the combined approach. *See Conn. Gen. Stats. Ann.* § 52–572h; *Mass. Gen. Laws Ann.* Ch. 231 § 85; *Nev. Rev. Stats.* § 41.141; *Ore. Rev. Stat.* 18.470; *Tex. Rev. Civ. Stats.* Article 2212a; *Hawaii Rev.Stat.* § 663–31 (1975 Supp.). Since our review of the language of the Act shows it not to be clear and unambiguous as to the legislature's intent, we must look to other sources to discover the intent of the General Assembly.

Harrisville's alternative argument is that if the Act is ambiguous then intent of the legislature can be clearly seen as favoring the "individual" approach through reference to the Act's legislative history and other jurisdictions with statutes similar to our Act which have adopted the "individual" approach. Specifically, Harrisville cites to the remarks of the Act's sponsor, the portion which seems to indicate that the Act was based on the Wisconsin comparative negligence statute, *Wis. Stats. Ann.* § 895.045. Harrisville contends these remarks are significant in light of case law in Wisconsin which has interpreted the Wisconsin act in favor of the "individual" approach. Harrisville also cites the comparative negligence statutes of other jurisdictions as similar to our Act that have been interpreted in favor of the "individual" approach.

Elder and PaTLA argue that if the Act is ambiguous, then we must interpret the Act in favor of the "combined" approach based on the objectives and purposes of the Act and based interpretations of the comparative negligence statutes of other jurisdictions which are more similar to our Act than the statutes cited by Harrisville and which adopt the "combined" approach over the "individual" approach. Specifically, they cite two jurisdictions as similar to Pennsylvania, Kansas, and Arkansas, because they use the plural whereas the statutes cited by Harrisville all use the singular. This distinction is crucial, argue Elder and PaTLA, because it indicates the legislature's intent when it uses the plural that a plaintiff's negligence must be compared to the combined negligence of all defendants in a multiple defendant case. Elder and PaTLA dismiss the legislative history cited by Harrisville as merely being an indication that Pennsylvania was adopting the same "type" of comparative negligence act and not that Pennsylvania was adopting every interpretation of the Wisconsin statute.

Our review of the legislative history cited by Harrisville does not persuade us that our legislature intended to adopt the Wisconsin act in toto together with all the judicial interpretations thereof. Indeed, the fact that the language

of the two acts is not the same leads us to conclude that there must have been some reason for the differences. There is simply not enough legislative history behind our Act for us to conclude that our legislature intended to accept the "individual" approach or the "combined" approach. Indeed, this lack of legislative history behind the Act has already been noted by this Court in *Heckendorn v. Consolidated Rail Corp.*, 293 Pa.Super. 474, 439 A.2d 674 (1981), in which we held that in an action by an employee against a third-party tortfesor, the employer could not be joined as an additional defendant for purposes of apportioning negligence under the Act. Despite this lack of legislative history, our review below will show that the legislature could not possibly have intended to adopt the Wisconsin or "individual" approach.

Before proceeding further, we note that there exist four basic "types" of comparative negligence statutes: 1) pure; 2) not greater than; 3) less than; and 4) slight-gross. *See* Pinto, *Comparative Responsibility—An Idea Whose Time Has Come*, 45 Ins. Counsel J. 115, 120–121 (Jan. 1978). We do not intend here to review the relative characteristics and merits of each type of statute. It is sufficient to note that the particular issue in this case would only arise under a type 2 or type 3 statute, and the statutes cited by the parties fall into these two types. Our act is a type 2 statute, that is the plaintiff's negligence must not be greater than the negligence of the defendant or defendants for plaintiff to recover. Elder and PaTLA have cited some type 3 statutes in support of their position and Harrisville argues that we should not consider such statutes and judicial interpretations thereof because they are a different "type" of statute. We summarily dismiss this argument because there is essentially no difference between the two types as far as determining when a plaintiff's recovery is barred by his contributory negligence. In the type 2 statute, a plaintiff can be up to 50% negligent and still recover, whereas under the type 3 statute, a plaintiff can only be a maximum of 49% negligent and still recover. The one percent differ-

ence is not crucial in our view to the issue presented in this case. What is crucial in our view is the language employed by a particular statute and the judicial interpretation of said statute. Thus, our analysis will center on the language of the particular statute and not its "type".

The main jurisdiction cited by Harrisville in support of its position is Wisconsin. The Wisconsin comparative negligence statute provides:

§ 895.045. Contributory Negligence. Contributory Negligence shall not bar recovery in an action by any person or his legal representative to recover damages resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering.

*Wis. Stat.* § 895.045.

The issue of the "individual" v. "combined" approaches first arose in Wisconsin in *Walker v. Kroger Grocery and Baking Co.*, 214 Wis. 519, 252 N.W. 721 (1934), in which the Wisconsin Supreme Court concluded that the language of the statute must be interpreted to mean that a plaintiff could only recover from a defendant if the plaintiff was not more negligent than that particular defendant regardless of the total negligence of all the defendants. In *Schwenn v. Loraine Hotel Co.*, 14 Wis.2d 601, 111 N.W.2d 495 (1961), the Wisconsin Supreme Court reaffirmed *Walker* and concluded that it did not believe the legislature intended that a more negligent plaintiff could recover from a less negligent defendant even if the plaintiff's negligence was not greater than the combined negligence of all the defendants in a multiple defendant case. Later Wisconsin cases have followed the "individual" approach, although as will be seen the view is not unanimous on the Wisconsin Court.

Other states have followed the Wisconsin approach, such as Minnesota. In *Marier v. Memorial Rescue Service, Inc.*, 296 Minn. 242, 207 N.W.2d 706 (1973) the Minnesota Supreme Court adopted the individual approach noting that its

own statute was taken verbatim from the Wisconsin act and that in such cases the Minnesota courts adopt the judicial interpretations of the state from which the statute was taken. No other reason was cited by the Minnesota Court for its adoption of the "individual" approach. Harrisville also cites the statutes of Vermont and New Jersey which have been interpreted in *Stannard v. Harris*, 135 Vt. 544, 380 A.2d 101 (1977); and *Van Horn v. William Blanchard Co.*, 173 N.J.Super. 280, 414 A.2d 265 (1980), respectively, in favor of the "individual" approach in support of its position.

We have already noted that the reference to Wisconsin in the legislative history of the Act hardly gives us crystal clear guidance in our interpretation of the Act. In addition, a close reading of the Wisconsin act and the other acts cited by Harrisville shows that they differ from our Act in one crucial respect. The statutes cited by Harrisville are all similar in that they refer only to the singular "person" or "defendant" in the clause of the statute which delineates when the plaintiff's negligence will bar his recovery. The Wisconsin, Minnesota, and New Jersey comparative negligence statutes all state that the plaintiff's contributory negligence will not bar recovery "if such negligence was not greater than the negligence of the person against whom recovery is sought". The Vermont statute cited by Harrisville provides for a similar result as long as the plaintiff's negligence was "not greater than the causal negligence of the defendant". The use of the singular in the above acts differs from the wording of our Act which allows recovery by a plaintiff so long as his negligence was "not greater than causal negligence of the defendant or defendants against whom recovery is sought". We cannot lightly dismiss this difference as Harrisville attempts to do when it argues that the inclusion of the plural was merely a recognition by our legislature that cases often involve multiple defendants. To hold with Harrisville would render meaningless the inclusion of the plural of "defendant" especially when not all statutes include the plural. We cannot assume that the legislature intended to include excess or meaning-

less words in the Act. Thus, we must look to those jurisdictions which include the plural in their act for guidance on the interpretation of our Act.

One state that employs the plural is Kansas. The Kansas comparative negligence statute provides that a plaintiff can recover so long as his negligence is less than "the party or parties against whom the claim is made". Kans. Stats. Ann. § 60–258a. The Kansas Supreme Court has held that the inclusion of the plural requires that in a multiple defendant case the negligence of the plaintiff must be compared to the combined negligence of all the defendants. *See Negley v. Massey Ferguson, Inc.*, 229 Kan. 465, 625 P.2d 472 (1981). Another state which has adopted the "combined" approach is Arkansas, despite that fact that there was originally no plural in the Arkansas comparative negligence statute. *See Walton v. Tull*, 234 Ark. 882, 356 S.W.2d 20 (1962); *Riddell v. Little*, 253 Ark. 686, 488 S.W.2d 34 (1972). The Arkansas statute was later amended to include the plural and the statute now provides that "if the fault chargeable to a party claiming damages is equal to or greater in degree than any fault chargeable to the party or parties from whom the claiming party seeks to recover damages, then the claiming party is not entitled to recover damages". Ark. Stats. Ann. §§ 27–1763 to 27–1765 (supplement). Thus, the Arkansas legislature apparently codified what had already been the law in its state.

The legislative intent that the plural of "defendant" or some similar term should be interpreted in favor of the combined approach is best seen in the example of Vermont following the Vermont Supreme Court's decision in *Stannard v. Harris, supra*. The statute interpreted by the *Stannard* court in favor of the "individual" approach made reference to only the singular term "defendant". Shortly after the *Stannard* decision, the Vermont legislature amended its statute to include the plural so that now a plaintiff can recover if his negligence was "not greater than the causal total negligence of the defendant or defendants". Vt. Stat. Ann., Tit. 12, § 1036. The Vermont legislature, by

inclusion of the plural and the word "total", appears to have definitely adopted the combined approach. Indeed, its statute is now similar to those cited above by this Court as explicitly adopting the "combined" approach.

Thus, our review of the comparative negligence statutes and judicial interpretations thereof reveals that the Wisconsin or "individual" approach has only been adopted in those states whose comparative negligence statute contains only the singular of "party" or "defendant" in their acts. Every state that employs the plural in its act, as well as some states that employ the singular, have adopted the "combined" approach. The fact that the "combined" approach should be the law in Pennsylvania is also clearly seen in the light of the policy reasons for the enactment of the statute.

An examination of the objectives and purposes of our Act and comparative negligence acts in general shows the "combined" approach, and not the "individual" approach, to be more in keeping with those goals. In all the Wisconsin cases which have adopted the "individual" approach there are offered few, if any, policy reasons for such an interpretation. The main reason appears to be the belief that the Wisconsin legislature could not have intended that a more negligent plaintiff could ever recover from a less negligent defendant. *See Schwenn v. Loraine Hotel Co., supra.* Indeed, some members of the Wisconsin Supreme Court have recently criticized its longstanding interpretation of its act to be unfair to plaintiffs and the cause of inequitable results that the comparative negligence act was meant to remedy. *See May v. Skelley Oil Co.,* 83 Wis.2d 30, 264 N.W.2d 574 (1978); *Gross v. Midwest Speedways, Inc.,* 81 Wis.2d 129, 146–148, 260 N.W.2d 36 (1977) (Abrahamson, J. dissenting). However, that court has apparently decided to leave any change to the legislature. *See Reiter v. Dyken,* 95 Wis.2d 461, 290 N.W.2d 510 (1980).

Harrisville's main policy argument in favor of the "individual" approach is that the "combined" approach causes an inequitable result in cases where a minimally negligent defendant is forced to pay the entire amount of the allowed

recovery and is unable to secure total contribution because the other tortfeasors are insolvent or have minimal insurance coverage. This is the position that Harrisville contends it has been put in in the instant case because it apparently has little hope of recovering the full amount of contribution from Orluck. The Arkansas Supreme Court eloquently rejected this argument over twenty years ago in *Walton v. Tull,* when it stated:

> We realize that where some tortfeasors are insolvent or unavailable, our conclusion may require a single defendant to bear the entire burden of the verdict. But this possibility of disportionate liability always exists when some of the wrongdoers cannot be made to pay their fair share. At common law, if the plaintiff was free from contributory negligence, he could recover his entire damages from any defendant whose negligence, however slight, was a concurring proximate cause of his injuries. We cannot adopt a narrow construction of our comparative negligence statute in the vain hope of avoiding inequitable situations due to insolvency. Obviously, either the plaintiff or the solvent defendant must suffer, and the loss has traditionally fallen on the wrongdoer.

234 Ark. at 893–94, 356 S.W.2d at 26.

The adoption of the "individual" approach would penalize a plaintiff who attempts to recover from as many defendants as possible because it is possible for a plaintiff to be only slightly negligent and be completely barred from recovery. Take for example a negligence case with one plaintiff and ten defendants. In the case, the jury finds the plaintiff to be only 10% negligent and all ten defendants to be a total of 90% negligent. However, the jury also finds that each defendant is equally negligent in the amount of 9% each. Under the approach advocated by Harrisville, the plaintiff's negligence must be compared to the negligence of each individual defendant, and the plaintiff could not recover from anyone because his individual negligence was greater than the individual negligence of any single defendant. We cannot believe that our legislature intended such a

result to occur. In fact the Arkansas Supreme Court observed similarly in *Walton v. Tull,* when it stated:

> We are not convinced that the legislature meant to go any farther than to deny recovery to a plaintiff whose own negligence was at least 50 percent of the cause of his damage. To refuse redress to an injured person whose negligence was only 10 percent of the total would almost be a return to the common law doctrine of contributory negligence.

234 Ark. at 893, 356 S.W.2d at 26.

It is beyond question that the Pennsylvania Comparative Negligence Act was enacted to remedy the harshness of the common law doctrine of contributory negligence, under which even 1% negligence by a plaintiff would bar his recovery. In any interpretation of the Act, therefore, we must choose that view which most effectuates the purpose of permitting recovery by a plaintiff who is not more negligent than those who committed the wrong against him. To adopt the "individual" approach could lead to situations, as shown above, where a plaintiff that the legislature intended should be able to recover some of his damages would be completely foreclosed from any recovery. We cannot sanction any interpretation of the Act which would produce such a result. The Act has adequate protections for defendants in the form of contribution based on the relative percentages of fault and the reduction of the verdict in favor of plaintiff by the plaintiff's percentage of negligence, if any, in a particular case. To the extent any other inequity is caused by the application of the Act, the defendant or defendants must bear such a burden.

Accordingly, we hold that the Pennsylvania Comparative Negligence Act, 42 Pa.C.S. § 7102, will bar recovery by a plaintiff only when his causal negligence is greater than that of the combined or aggregate negligence of all the defendants guilty of causal negligence in connection with plaintiff's injuries. We also find that the mere fact that an individual defendant's percentage of causal negligence is less than the percentage of the plaintiff's negli-

gence will not bar the plaintiff from recovering the full amount of the allowed recovery from that defendant so long as the plaintiff's negligence is not greater than the combined or aggregate negligence of all the defendants. This is the only logical and fair approach to take in light of the language and purposes of our Act. Any other conclusion would violate the intent of the legislature which enacted the Act. Based on this reason, as well as other foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

MONTGOMERY, J., files a dissenting opinion.

MONTGOMERY, Judge, dissenting:

I respectfully dissent. I would reverse and order a new trial on two grounds. First, I disagree with the conclusion reached by the Majority that it was not error for the lower court to have charged the jury on the sudden emergency doctrine. I do not believe that the record contains any evidence of the type which would have supported a charge regarding that doctrine. Moreover, I believe that the error in giving that charge was compounded by the lower court's explanation to the jury of the assured clear distance rule. In the fact situation presented in the instant case, I believe that the charges on sudden emergency and assured clear distance were mutually exclusive. See and compare *Sullivan v. Wolson*, 262 Pa.Super. 397, 396 A.2d 1230 (1978). Confusion by the jury was unavoidable in these circumstances and a new trial is mandated.

Secondly, I would award a new trial based upon my conclusion that the evidence was insufficient to find the Borough of Harrisville negligent. In light of the record as a whole, I cannot conclude that sufficient evidence was presented to show a departure by the Borough from a reasonable standard of care in connection with the events leading to the collision which gave rise to this litigation. Thus, I would also reverse on that ground.