## Klugh Estate.

Argued May 26, 1949. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Donald B. Waltman,* with him *George M. Houck,* for appellant.

*Spencer D. Wareheim,* with him *Ralph F. Fisher,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, June 24, 1949:

Hugh W. Castles filed a petition asking the court below to decree specific performance of a lease-option agreement quoted below,[1] and entered into with Rosa B. Klugh, now deceased, dated April 1, 1935, which gave the "Klugh Lumber Company" and its successors the use of certain real estate at a designated rental, together with the right "to purchase said lot, buildings and fixtures for the sum of five thousand (5000.00) dollars at any time during the said period." The petition alleges that Hough W. Castles, took exclusive possession of the said premises on April 1, 1935, and has since maintained

---

[1] "Dillsburg, Pa., April 1, 1935: Privilege is hereby given to the Klugh Lumber Company, or its successor, to use the lot of ground located on Second & Church Streets, Dillsburg, York Co., Penna., 198 feet deep and 129 feet wide, belonging to Ross Klugh. Also the use of sheds, office and fixtures, for an indeterminate period beginning April 1, 1935 and terminating one year after the owner gives notice to Klugh Lumber Company, or its successor, in writing, of the owners desire to terminate this lease. The privilege is also given the Klugh Lumber Company, or its successor, to purchase said lot, buildings and fixtures for the sum of five thousand (5000.00) dollars at any time during the said period. The monthly rental for use of said property shall be twenty-five (25.00) dollars. /s/ Rosa B. Klugh."

it. Rosa B. Klugh died on May 24, 1935, and by her last will she gave a life estate in all her real estate to her sister, Huldah B. Rearick, and with remainder to Huldah's issue. Huldah's husband, J. Harold Rearick, was named executor of her will.

Petitioner now doing business as an individual under the name "Klugh Lumber Company" is the successor to the firm formerly composed of petitioner and Ira S. Eberly with which the above agreement was made by Rosa B. Klugh on April 1, 1935. Ira S. Eberly subsequently withdrew from the business. Petitioner alleges that he has made various improvements and additions to this real estate, and has over the years built up a successful business in connection with the use of the premises under the name of Klugh Lumber Company. No deed for the said premises was ever executed, nor any provisions made for the conveying of the premises by the decedent in her lifetime, nor by her executor. On July 8, 1947, Castles received his first notice to vacate the premises. He refused to do so and avers that he is now ready, willing and able to perform the agreement of April 1, 1935.

The answer sets forth, inter alia, that Klugh Lumber Company has no legal existence, and, therefor, had no successor, and Hugh W. Castles is not the "successor" to the firm of Klugh Lumber Company; that since April 1, 1935, the property has increased in value and is presently worth several times the price stipulated in the agreement; and that the petitioner is guilty of laches in not heretofore and prior to receiving notice to quit the premises, attempting to exercise the option. It is pleaded that it would be inequitable and unjust for the Court to decree specific performance at this late date.

Respondents state that Huldah B. Rearick, the life tenant, notified petitioner before his petition was presented to the Orphans' Court to vacate the premises,

and they contend that Castles relinquished any rights that he had under the lease of April 1, 1935, by later asking for and accepting leases for the same premises, which leases contained no option to purchase. In a letter written by Castles to Mr. and Mrs. Rearick, dated July 20, 1945, he said: "As you will remember I had an option to buy this property, given by Mr. Klugh, which was relinquished to you when the estate changed hands. In order to do what I'd like to do, as I'd like to see it done, will you permit me to exercise that option and buy this property at this time?"

The court found, inter alia, that (A) On August 6, 1935, J. Harold Rearick, as the executor of the estate of Rosa B. Klugh, executed and delivered to the co-partnership, trading as "Klugh Lumber Company," a written instrument purporting to be a lease for the premises, in which all reference to an option to purchase the premises by the lessees was omitted. The monthly rental was $25.00, and the lease was not run for "an indeterminate period beginning August 6th, 1935," and would terminate one year after the owner gave written notice to the Klugh Lumber Co., or its successor, of its desire so to do. (B) On September 27, 1935, Huldah B. Rearick, life tenant, as party of the first part, and Castles and Eberly, trading as "Klugh Lumber Company," as parties of the second part, made a lease for one month from October 1, 1935, in which no reference was made to any option to purchase. This agreement provided that either party had the right to terminate the lease upon twelve months' notice. (C) After Eberly sold his interest in the co-partnership to Castles, the latter expressed a wish for a new lease on the premises, and, on July 1, 1943, another monthly lease was entered into between Huldah B. Rearick and Castles, in which no reference was made to any option to purchase.

During the years 1937, 1938 and 1939, the premises were improved by certain constructions at a cost of ap-

proximately $5,000.00, divided about equally between lessor and lessee. The respondents have agreed to reimburse Castles for the cost of such improvements.

When on July 8, 1947, Mr. and Mrs. Rearick notified Castles to vacate the premises, they stated in their letter, inter alia: "When you have decided on your plans, I will then discuss with you payment for the building which you use as a mill, also we will then talk over other improvements which you have made, possibly we can reach agreements so that you will not lose by this move, and it is now and will be our desire to handle this entire matter as fairly as possible.

"Mr. Castles, we have no ill feeling which causes us to ask for this property, it is simply that our own family want the use of it. There is no rush for you to vacate, we want you to have ample time to make your plans and arrangements."

Castles replied to this letter through his attorney, George M. Houck, under date of August 20, 1947. Reference therein was made to the option dated April 1, 1935, and its provisions. The writer concluded therein by claiming that Castle has "the right to exercise this option any time prior to July 8th, 1948. Therefore, in behalf of my client, Hugh W. Castles, I hereby notify you that he does hereby exercise said option and now desires to purchase the aforesaid property for the sum of Five Thousand ($5,000.00) Dollars. He is prepared to pay the purchase price upon receipt of a proper Deed."

The court found that the present value of the land in controversy is $4,515, and the sale value of the land with the improvements is $14,000, and the replacement value of the improvements is between $16,000 and $18,000.

The court in its opinion says that "The evidence is clear that Castles, representing the copartnership, was anxious to procure a new lease after Rosa B. Klugh died, and that it was the result of his solicitation that

the subsequent leases were entered into. . . . As we view the effect of the three leases entered into subsequent to April 1, 1935, in none of which an option to purchase is given to the lessee, they each in turn constituted an absolute substitute for the former lease." The court cites *Weldon & Kelly Co. v. Pavia Company,* 354 Pa. 75, 79, 46 A. 2d 466, where we held: " 'It is always competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified, changed, or a new one substituted. And this may be shown by parol, by showing either an express agreement, or actions necessarily involving the alteration': Holloway v. Frick, 149 Pa. 178, 180, 24 A. 201; Mazer v. Kann, 343 Pa. 376, 379, 22 A. 2d 707, 708, 709. The agreement to rescind need not be expressed in words: it may be inferred from the acts and declarations of the parties inconsistent with the existence of the original contract; Brentwood Realty Company v. Moses, 73 Pa. Superior Ct. 307, 312."

The court below in the instant case continued: "Under the above authority, the status of Castles as an optionee must be determined as under the lease of July —, 1943, and this lease contained no option to purchase the premises. Under the most liberal construction of the lease of April 1, 1935, it might be, although it is unnecessary to determine the question, that the term of the option therein contained did not expire until one year after the lease dated August 6, 1935; but even with that construction it avails the petitioner nothing. The acceptance by a tenant of a new lease during the term is a surrender of the old lease. Bergner v. Palethorp, Trustee, 2 W. N. C. 297."

"The specific performance of a contract in equity is of grace not of right. It is not the function of a Court of Equity to make a contract for the parties, nor to supply any material stipulation thereof. The essential basis of a decree for specific performance of a contract

to convey real estate is a definite present agreement. Here the petitioner had no such agreement, as all of his right in his option expired with the cancellation, rescission, substitution, or whatever we wish to call it, of the lease of April 1, 1935."

The court concluded as a matter of law that the option to purchase the premises, contained in the lease dated April 1, 1935, was not a valid, subsisting contract on August 20, 1947, when the petitioner elected to exercise "that option"; that petitioner "had no valid option of any kind to purchase the premises," and therefore it refused the prayer of the petition and dismissed it at petitioner's cost.

Williston on Contracts (Rev. Ed.) Vol. VI, section 1826, p. 5171, says regarding the rescission of a contract by parol agreement: "The agreement to rescind or modify need not be express. Mutual assent to abandon a contract, like mutual assent to form one, may be inferred from the attendant circumstances and conduct of the parties. Therefore, 'If either party without right claims to rescind the contract, the other party need not object, and if he permit it to be rescinded, it will be done by mutual consent.' But the situation must justify such an inference for 'mere failure to object to repudiation is not a manifestation of assent to a rescission.' Sometimes circumstances of a negative character, such as the failure to take any steps looking towards the enforcement or performance of the contract, also justify the inference of mutual assent to rescind."

Section 408, Restatement of Contracts, says: "A contract containing a term inconsistent with a term of an earlier contract between the same parties is interpreted as including an agreement to rescind the inconsistent term in the earlier contract. The parties may or may not at the same time agree to rescind all the other provisions of the earlier contract. . . ." Since all three contracts which the petitioner entered into after the date of the

alleged contract which now forms the basis of his claim were inconsistent with the existence of the 1935 lease-option contract, it follows that the parties indicated by their conduct their intent to abandon the first lease contract of April 1, 1935.

12 Am. Jur. §433 makes this statement: "A contract need not be rescinded by an express agreement to that effect. The rule is well settled that the parties to a contract may rescind it by making a new contract inconsistent therewith." The author cites *United States ex rel. International Contracting Co. v. Lamont,* 155 U. S. 303, 39 L. ed. 160, 15 S. Ct. 97, and other cases. In *Hahn v. General American Life Ins. Co.,* 272 N. W. 321, 323, the Supreme Court of Nebraska made this statement: "The provisions of a contract will be considered abandoned where each party performs acts inconsistent with its existence and acquiesces in such acts by the other. Reichert v. Mulder, 121 Neb. 11, 235 N. W. 680; Herpolsheimer v. Christopher, 76 Neb. 352, 107 N. W. 382, 111 N. W. 359, 9 L. R. A. (N. S.) 1127, 14 Ann. Cas. 399."

In *United States ex rel. International Contracting Co. v. Lamont,* supra, p. 310, the United States Supreme Court cited the following from an earlier case, in reference to a later contract which the parties had entered into regarding the subject matter of a previous contract: "Having made it and executed it, their mouths are closed against any denial that it superseded all previous arrangements."

The heretofore quoted statement made by Castles to Mr. and Mrs. Rearick on June 20, 1945, that he "had an option to buy this property" and that "this was relinquished to you when the estate changed hands" clearly indicates that on that date Castles made no claim to possession of the option created by the agreement of April 1, 1935. Furthermore, his conduct in seeking and securing subsequent leases for the same premises from

the life tenant is inconsistent with the averment which is the basis of his petition for the decree prayed for. The fact that the life tenant who made the subsequent leases did not possess the same complete interest in the property which was possessed by the maker of the agreement of April 1, 1935, is of no materiality. By entering into a subsequent lease for the same property Castles indicated that he considered the lease of April 1, 1935, non-existent. The court was justified in the conclusion that the petitioner "had [on August 20, 1947] no valid option of any kind to purchase the premises described in the petition."

The court's findings of fact were fully supported by the evidence, its conclusions of law were accurate and its decree logically followed.

The decree is affirmed at appellant's cost.