**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 21-1620

———————————

PATRICE KANTZ,
ON BEHALF OF HERSELF
INDIVIDUALLY AND ON BEHALF
OF THOSE SIMILARLY SITUATED

v.

AT&T, INC.; AT&T SERVICES, INC.,
                                        Appellants

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-20-cv-00531)
District Judge: Honorable J. Curtis Joyner

———————————

Submitted under Third Circuit LAR 34.1(a)
on January 13, 2022

Before: AMBRO, BIBAS, and ROTH, <u>Circuit Judges</u>

(Opinion filed: February 10, 2022)

———————————

OPINION[*]

———————————

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

ROTH, <u>Circuit Judge</u>

In 2012, AT&T employee Patrice Kantz became a party to a voluntary arbitration agreement covering any claims she might have against AT&T.  Seven years later, AT&T reduced its workforce and terminated Kantz.  AT&T offered severance benefits to Kantz in exchange for a release of claims. She accepted these benefits and executed a general release and waiver.  Kantz then brought a putative collective action against AT&T for violations of the Age Discrimination in Employment Act (ADEA).  AT&T asked the District Court to compel individual arbitration and stay proceedings under the 2012 Arbitration Agreement.  The District Court denied AT&T's request, finding that the 2019 General Release superseded the 2012 Arbitration Agreement.

Because the District Court correctly interpreted the 2019 General Release, we will affirm its decision denying AT&T's motion to compel arbitration.

**I**

In December 2011, AT&T sent Kantz an email titled "Action Required: Arbitration Agreement."[1]  The email explained, "AT&T has created an alternative process for resolving disputes between the company and employees.  Under this process, employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes."[2]  AT&T made clear that "[t]he decision on

[1] Appx. 103.
[2] Appx. 88.

whether or not to participate [in the arbitration agreement] is yours to make" and that

"[i]f you do not opt out by the deadline, you are agreeing to the arbitration process as set

forth in the [Arbitration] Agreement."[3]  The Agreement applied

> to any claim that you may have against any of the following:  (1) any AT&T company, (2) its present or former officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities, and all successors and assigns of any of them; and this agreement also applies to any claim that the Company or any other AT&T company may have against you.[4]

The Arbitration Agreement covered, among other claims, ADEA claims and claims

"arising out of or related to your employment or termination of employment with the

Company."[5]  The Arbitration Agreement also purported to "survive[ ] after the

employment relationship terminates."[6]  After receiving a reminder email from AT&T,

Kantz accessed the Arbitration Agreement, clicked the "Review Completed" button, and

never opted out.

In January 2019, AT&T announced a workforce reduction.  As part of the

reduction, AT&T decided to let Kantz go.  AT&T offered Kantz a severance package,

which included the requirement that "to be eligible to receive benefits . . . you must

acknowledge the provisions of the" General Release and Waiver AT&T provided.[7]  The

2019 General Release stated that it

> set forth the entire agreement between me and the Companies concerning termination of my employment.  Any other promises or representations,

---

[3] Appx. 88.
[4] Appx. 90.
[5] Appx. 90–91.
[6] Appx. 91.
[7] Appx. 164.

written or oral, are replaced by the provisions of this document and are no longer effective unless they are contained in this document.[8]

The General Release did not include an arbitration clause. Kantz accepted AT&T's severance package and signed the General Release.

Kantz later sued AT&T in federal court for violating the ADEA. AT&T asked the District Court to compel arbitration under the 2012 Arbitration Agreement. The District Court denied AT&T's request. It concluded that it "cannot compel arbitration because the General Release, which did not include an agreement to arbitrate, superseded the [Arbitration Agreement]."[9] According to the District Court, this was because "[t]he [G]eneral Release and the [Arbitration Agreement] are 'agreements between the same parties as to the same subject matter,'" Thus, the 2019 general release superseded the 2012 Arbitration Agreement.[10] AT&T appealed.

## II

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331. We exercise jurisdiction over AT&T's interlocutory appeal under 28 U.S.C. § 1291 and the Federal Arbitration Act, which provides that "an appeal may be taken from an order denying a petition to compel arbitration."[11]

---

[8] Appx. 137.
[9] Appx. 13.
[10] Appx. 13 (quoting *Jaludi v. Citigroup*, 933 F.3d 246, 256 (3d Cir. 2019)).
[11] *O'Hanlon v. Uber Technologies, Inc.*, 990 F.3d 757, 762 (3d Cir. 2021) (quoting 9 U.S.C. § 16(a)(1)(B) (cleaned up)).

4

"We exercise plenary review of the District Court's order on a motion to compel arbitration."[12]

> We use the standard for summary judgment under Federal Rule of Civil Procedure 56(a) when reviewing the underlying motion 'because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate. Thus, a motion to compel arbitration should only be granted if there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law.[13]

In support of its position, AT&T argues that Kantz "agreed in 2012 to arbitrate any claims she may have in the future against AT&T" and that "[n]othing in the 2019 General Release (which extinguished Kantz's legal rights) has anything to do with the Arbitration Agreement (which prescribed the forum in which claims over her rights would be resolved)."[14] If AT&T were correct, arbitration would be proper.

"Deciding whether arbitration is required is a two-step process: in the first step, the court determines whether 'there is an agreement to arbitrate,' and then in the second step, the court decides whether 'the dispute at issue falls within the scope of the agreement.'"[15] State law governs the first step.[16] Thus, we apply Pennsylvania law to determine whether the 2019 General Release (with no arbitration provision) superseded

---

[12] *White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017) (quoting *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014)).
[13] *Id.*
[14] Appellants' Opening Br. at 9.
[15] *Jaludi*, 933 F.3d at 254 (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513 523 (3d Cir. 2009)).
[16] *See id.*

5

the 2012 Arbitration Agreement.[17]  "[T]he question of whether a later agreement supersedes a prior arbitration agreement is tantamount to whether there is an agreement to arbitrate."[18]  At the first step, there is no presumption of arbitrability.[19]  "Under Pennsylvania law, the later of two agreements between the same parties as to the same subject matter generally supersedes the prior agreement."[20]  "This is true even if the first agreement includes an arbitration clause and the second agreement does not."[21]

We begin with the text.  The language of the 2019 General Release states, in relevant part, that

> [t]he provisions of this General Release and Waiver set forth the **entire agreement between me and the Companies concerning termination of my employment.  Any other promises or representations, written or oral, are replaced by the provisions of this document and are no longer effective unless they are contained in this document.**[22]

Here, the two agreements did not concern precisely the same subject matter.  The 2012 Arbitration Agreement is much broader than the 2019 General Release.  The 2019 General Release, by its own terms, is the parties' "entire agreement . . ." concerning

---

[17] *See id.* ("We thus apply 'ordinary state-law principles that govern the formation of contracts' to determine whether the subsequent arbitration agreement supersedes a prior agreement.") (quoting *Century Indem.*, 584 F.3d at 524).

[18] *Id.* at 255.

[19] *See id.* at 254 (citing *Century Indem.*, 584 F.3d at 526-27; *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1122 (11th Cir. 2014); *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011)).

[20] *See id.* at 256 (citing *In re Klugh's Estate*, 66 A.2d 822, 825 (Pa. 1949)).

[21] *Id.* (citing *Collier v. Nat'l Penn Bank*, 128 A.3d 307, 311 (Pa. Super. Ct. 2015)).

[22] Appx. 137 (emphasis added); *see also Applied Energetics, Inc.*, 645 F.3d at 525 (holding that a later agreement that is silent on arbitration supersedes an earlier agreement providing for arbitration because "[b]oth provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other").

termination."[23] The 2012 Arbitration Agreement covers termination disputes, too, but it also covers "claim[s] AT&T . . . may have against [Kantz]."[24]

Yet, a complete subject-matter overlap is not a requirement for supersession under Pennsylvania law. Where just one term in a later contract is "inconsistent with a term [in] an earlier contract" courts will interpret the later contract "as including a term to rescind the inconsistent term in the earlier contract."[25] Further, "the parties may or may not at the same time agree to rescind all the other provisions of the earlier contract."[26]

Applying that approach here, we conclude that the 2019 General Release supersedes the 2012 Arbitration Agreement as it relates to termination disputes. The merger clause in the 2019 General Release confirms that result: it is the "entire agreement between [Kantz] and the Companies concerning termination."[27] AT&T could have included an arbitration provision in the 2019 general release but it did not do so. So, the District Court was correct that Kantz may litigate her termination-related claims in federal court. The 2012 Arbitration Agreement, however, remains in place for other potential disputes between Kantz and AT&T.

The District Court thus properly declined to compel arbitration because the 2019 General Release included no arbitration provision, and the 2019 General Release superseded the 2012 Arbitration Agreement with respect to Kantz's termination.

---

[23] Appx. 237.
[24] Appx. 90.
[25] *In re Klugh's Est.*, 66 A.2d at 825.
[26] *Id.*
[27] Appx. 137.

7

For the foregoing reasons, we will affirm the judgment of the District Court.