J-A21039-23 & J-A21040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| ALAN REDMOND | | No. 2591 EDA 2022 |
| Appellant | | |

Appeal from the Order Entered September 26, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  220202794

| | | |
|---|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC., BY AND THROUGH ITS COURT-APPOINTED RECEIVER, RYAN K. STUMPHAUZER | : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | | |
| v. | | No. 1109 EDA 2023 |
| ALAN REDMOND | | |

Appeal from the Order Entered September 26, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  220202794

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:         **FILED MAY 9, 2024**

Alan Redmond ("Redmond") appeals at docket no. 2591 EDA 2022 from
the September 26, 2022 order overruling in part his preliminary objections,
which sought to compel arbitration of the claims asserted against him in a

complaint filed by Complete Business Solutions Group, Inc. ("CBSG"). Additionally, CBSG, by and through its court-appointed receiver, Ryan K. Stumphauzer, appeals from the same order at docket no. 1109 EDA 2023 to the extent that said order sustained Redmond's preliminary objections and compelled arbitration of its claims.[1]  After careful review, we affirm in part, reverse in part, and remand for further proceedings.

The trial court summarized the relevant facts and procedural history as follows:

> This dispute arises out of an alleged failure to make payment under a series of agreements for the purchase and sale of future receivables.  Pursuant to the agreements, eight in total, [CBSG] purchased certain accounts receivable from entities controlled by [Redmond].  In connection with, and as an incorporated term of each agreement, [Redmond] personally guaranteed the obligations.
>
> Each of the eight agreements is substantially similar in form and substance and all of the agreements contain a clause incorporating any previous obligations available under prior agreements between the contracting parties, in addition to a clause permitting disputes arising out of or related to the business relationship of the contracting parties to be brought in any court of common pleas.
>
> However, only the three earliest in time of these agreements — those dated 11/19/2019, 03/17/2020, [and] 05/15/2020 — contain a clause expressly requiring any dispute arising out of or in connection with the agreements to be submitted to arbitration. Exhibits A, B, C to the Complaint[, 2/28/22].  These three

---

[1] For ease of disposition, we consolidate the appeals at docket nos. 2591 EDA 2022 and 1109 EDA 2023 *sua sponte*, as the issues in both matters involve the same parties and are closely related.  **See** Pa.R.A.P. 513 ("Where there is more than one appeal from the same order, … the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal.").

agreements also limit the jurisdiction of courts of common pleas to only … those claims not subject to the binding arbitration clause. In contrast, the latter five agreements — those dated 06/03/2020, 06/17/2020, 07/01/2020, 07/13/2020, and 07/23/2020 — do not contain a binding arbitration clause or limit what disputes arising under the agreements or arising out of or related to the business relationship may be brought in a [c]ourt of [c]ommon [p]leas. Exhibits D, E, F, G, and H to the Complaint.[2]

On February 28, 2022, Ryan K. Stumphauser…, on behalf of CBSG, initiated this action against [Redmond] to enforce CBSG's rights under the agreements[.]3 [Redmond] responded with preliminary objections, asserting that this court lacked jurisdiction because [CBSG] was required to submit any claims related to all eight agreements to arbitration. Finding that only the three earliest in time agreements were subject to a binding arbitration clause, and that the parties did not mutually assent to having the remaining five agreements subject to binding arbitration, this court sustained the preliminary objections only to those three earliest in time agreements and overruled the remaining preliminary objections. [**See** Order, 9/26/22 (single page).]

> 3 On July 27, 2020, the United States District Court for the Southern District of Florida appointed [Ryan K. Stumphauser] as the receiver for CBSG, and related entities, in **Securities and Exchange Commission v. Complete Business Solutions Group, Inc., et al.**, at [d]ocket [no.] 20-cv-81205-RAR.

Trial Court Opinion ("TCO"), 1/4/23, at 1-3 (some footnotes omitted).

Redmond filed — at docket no. 2592 EDA 2022 — a timely notice of appeal from the September 26, 2022 order, which overruled, in part, his preliminary objections seeking to compel arbitration of the claims related to

---

2 The purchase agreements dated 11/19/2019, 03/17/2020, 05/15/2020 06/03/2020, 06/17/2020, 07/01/2020, 07/13/2020, and 07/23/2020, are referred to herein as Exhibits A, B, C, D, E, F, G, and H, respectively. The agreements dated 11/19/2019 and 7/23/2020 are also sometimes referred to herein as the "First Agreement" and the "Eighth Agreement[,]" respectively.

all eight agreements.[3]  The trial court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he timely complied. The trial court filed a responsive Rule 1925(a) opinion on January 4, 2023. On December 27, 2022, CBSG petitioned this Court for permission to appeal the September 26, 2022 interlocutory order, pursuant to Pa.R.A.P. 1311(a)(1) and 42 Pa.C.S. § 702(b).  On May 8, 2023, we granted CBSG's petition, allowing its appeal to proceed at docket no. 1109 EDA 2023, and directed the prothonotary to list this appeal consecutively with Redmond's appeal at no. 2591 EDA 2022.  The trial court did not direct CBSG to file a Rule 1925(b) concise statement; however, it filed a duplicate Rule 1925(a) opinion on May 16, 2023.[4]

Herein, Redmond presents the following issues for our review:

---

[3] We recognize that an order overruling preliminary objections is an interlocutory order.  **See In re Estate of Atkinson**, 231 A.3d 891, 897 (Pa. Super. 2020).  "The law is clear, however, that an order overruling preliminary objections that seek to compel arbitration is an interlocutory order appealable as of right pursuant to 42 Pa.C.S. § 7320(a)(1) and Pa.R.A.P. 311(a)(8)." **Id.** (citations omitted).  **See also** 42 Pa.C.S. § 7320(a)(1) ("An appeal may be taken from … [a] court order denying an application to compel arbitration made under section 7304 (relating to proceedings to compel or stay arbitration)."); Pa.R.A.P. 311(a)(8) ("An appeal may be taken as of right … from … [a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties."). Thus, we conclude that Redmond's appeal is properly before us.

[4] Because the Rule 1925(a) opinions submitted by the trial court in each of the above matters are identical in substance, for ease, we refer to the trial court's January 4, 2023 opinion filed at docket no. 2591 EDA 2022 as the "TCO" for these consolidated appeals.

- 4 -

1. Whether the trial court erred in overruling, in part, [Redmond's] preliminary objections seeking to compel arbitration for [CBSG's] claims based on the agreements attached as Exhibits D, E, F, G[,] and H to the complaint, where: (a) the earlier in time agreements attached as Exhibits A, B, and C to the complaint contained mandatory arbitration clauses; (b) each of those earlier in time arbitration agreements apply to all "other agreements" between the parties; and (c) the trial court lacked jurisdiction to determine the scope of the arbitration clauses in Exhibits A, B[,] and C[,] since the arbitration clauses require the issue of arbitrability — that is, whether the claims asserted are within the scope of the arbitration clause — must be decided by the arbitrator, not the court?

*\*\**

2. Whether, even if the trial court had jurisdiction to determine the scope of the arbitration clauses, the trial court still erred in overruling, in part, [Redmond's] preliminary objections seeking to compel arbitration for [CBSG's] claims based on the agreements attached as Exhibits D, E, F, G[,] and H to the complaint, where: (a) there were binding arbitration clauses appearing in the earlier in time agreements attached as Exhibits A, B[,] and C to the complaint; (b) each of those earlier in time agreements contained "Incorporation" clauses mandating arbitration for all claims "arising from other agreements," and (c) the earlier in time agreements expressly stated that all "terms" "shall survive" the execution of the agreements and "shall continue in full force" until all obligations have been satisfied in full?

Brief of Appellant ("Redmond's Brief"), 4/17/23, at 4-5 (No. 2591 EDA 2022)

(unnecessary capitalization omitted).

Additionally, CBSG raises the following sole claim:

Whether the trial court erred in granting in part, [Redmond's] preliminary objections seeking to compel arbitration based on the agreements attached to [CBSG's] complaint as Exhibits A, B, and C, where: (a) the eighth and final agreement, *i.e.*, the controlling agreement and attached to the complaint as Exhibit H, does not contain an arbitration provision and unambiguously eliminated the arbitration provisions appearing in earlier agreements through integration and incorporation; (b) [Redmond's] prior payment

- 5 -

obligations owing under earlier agreements were incorporated and restated in [the] eighth and final agreement; and (c) [Redmond] explicitly consented to jurisdiction and venue in the Court of Common Pleas of Philadelphia County?

Brief of Appellant ("CBSG's Brief I"), 6/28/23, at 5 (No. 1109 EDA 2023) (unnecessary capitalization omitted).

We review the trial court's ruling on the preliminary objections seeking to compel arbitration to determine whether its decision was supported by substantial evidence and whether the trial court abused its discretion. *In re Estate of Atkinson*, 231 A.3d at 898.

> In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement.
>
> Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary. The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally. These are questions of law and our review is plenary.
>
> Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreement should not be extended by implication.

*Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa. Super. 2012) (internal citations and quotation marks omitted).

Initially, we reject Redmond's claim that the trial court lacked jurisdiction to determine the scope of the arbitration clauses in Exhibits A, B,

- 6 -

and C, based on his contention that the arbitration clauses require the issue of arbitrability to be decided by an arbitrator, not the court. *See* Redmond's Brief at 15 (asserting that "[t]he parties agreed to arbitrate not just all disputes arising from or related to their contractual relationship but to arbitrate even the issue of the arbitrability of this dispute"). Redmond's argument presumes the validity of the arbitration clause contained within the first three purchase agreements. *See* Exhibits A, B, and C. However, as CBSG notes, the parties dispute whether an agreement to arbitrate exists. *See* Brief of Appellee ("CBSG's Brief II"), 5/17/23, at 24 (No. 2591 EDA 2022). *See also id.* at 22 (arguing that the parties agreed at the time they entered the Eighth Agreement to eliminate the arbitration clause contained in the earlier agreements).

"Our decisional law has made clear that the issue of whether a party agreed to arbitrate a dispute is a threshold, jurisdictional question that must be decided by the court." *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 654 (Pa. Super. 2013) (internal citations omitted). *See also Ross Development Co. v. Advanced Bldg. Development, Inc.*, 803 A.2d 194, 196 (Pa. Super. 2002) ("In a proceeding to … compel arbitration, the question of whether the parties agreed to arbitrate, commonly referred to as 'substantive arbitrability,' is generally one for the courts and not for the arbitrators.") (citation omitted). Where a party to a civil action seeks to compel arbitration, the trial court must employ a two-part test. *Callan v. Oxford Land Development, Inc.*, 858 A.2d 1229, 1233 (Pa. Super. 2004).

> First, the trial court must establish if a valid agreement to arbitrate exists between the parties. Second, if the trial court determines such an agreement exists, it must then ascertain if the dispute involved is within the scope of the arbitration provision. If a valid arbitration agreement exists between the parties, and the plaintiff's claim is within the scope of the agreement, the controversy must be submitted to arbitration.

*Id.* (internal citations omitted). Moreover, Pennsylvania Rule of Appellate Procedure 1028(c)(2) mandates the trial court to promptly determine all preliminary objections. *See* Pa.R.Civ.P. 1028(c)(2) ("The court shall determine promptly all preliminary objections. If an issue of fact is raised, the court shall consider evidence by depositions or otherwise.").

Here, Redmond filed preliminary objections seeking to compel arbitration of CBSG's claims. *See* Pa.R.Civ.P. 1028(a)(6) (permitting preliminary objections based upon an "agreement for alternative dispute resolution"). CBSG filed a response, denying the existence of a valid, enforceable arbitration agreement. It averred rather that the dispute resolution procedures provided for in the earlier agreements were materially altered by subsequent agreements entered into by the parties, and that the eighth and final agreement does not contain any arbitration provision. Response in Opposition to Preliminary Objections, 5/16/22, at ¶¶ 1-5. *See also id.* at ¶ 4 (averring that the agreements contained in Exhibits A-G were incorporated into the Eighth Agreement and that Redmond consented to the trial court's jurisdiction therein).

Based on the foregoing, we agree with the trial court that it was required to determine, at the time it ruled on Redmond's preliminary objections,

whether a valid agreement to arbitrate existed and whether CBSG's claims were within the scope of any such arbitration agreement. *See* TCO at 6. *See also Davis v. Center Management Group, LLC*, 192 A.3d 173, 182 (Pa. Super. 2018) (concluding that the trial court's failure to determine whether a dispute was arbitrable at the preliminary objection stage was an abuse of discretion).

Next, we address the merits of the parties' remaining issues regarding whether the trial court erred in overruling in part and sustaining in part Redmond's preliminary objections seeking to compel arbitration of CBSG's claims. In addition to applying the two-part test set forth in *Elwyn*, *supra*, we remain mindful of the following principles of contract law:

> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, "[w]e need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Szymanowski v. Brace*, 987 A.2d 717, 722 (Pa. Super. 2009) (citation omitted).

Instantly, the trial court offered the following explanation of its September 26, 2022 decision regarding Redmond's preliminary objections:

> [T]here are a total of eight agreements, all of which have been incorporated into each other, and all of which are fully integrated.

- 9 -

Only the three earliest in time agreements, however, include clauses expressly requiring binding arbitration, and allowing the parties to institute an arbitration proceeding as a remedy upon an event of default. The remaining five agreements have no binding arbitration clause, and expressly allow the parties to institute a legal proceeding as a remedy upon an event of default. The incorporation clauses of the latter five agreements, therefore, appear to be in direct conflict with the remedies and jurisdiction clauses of these agreements if the incorporation clauses in these agreements are interpreted in a way that subjects disputes arising between the parties as to these five agreements to binding arbitration.

Where a contract refers to and incorporates the provisions of another, both shall be construed together. *Southwestern Energy Production Co. v. Forest Resources, LLC*, … 83 A.3d 177 ([Pa. Super.] 2013). It is axiomatic in contract law that two provisions of a contract should be read so as not to conflict with each other if it is reasonably possible. *In re Binenstock's Trust*, … 190 A.2d 288 ([Pa.] 1963)[.] *See also*[] *Lenau v. Co-eXprise, Inc.*, … 102 A.3d 423 ([Pa. Super.] 2014) (noting that contractual clauses must be construed, whenever possible, in a manner that effectuates all of the clauses being considered). A contract should not be interpreted in a way that leads to an absurdity or renders the contract ineffective to accomplish its purpose. *Binswanger of Pennsylvania, Inc. v. TSG Real Estate, LLC*, 217 A.3d 256 (Pa. 2019). Instead, courts should endeavor to find an interpretation that will effectuate the reasonable result intended. *Id.*

Here, it is clear that the parties intended to have all disputes arising under the three earliest in time agreements subject to binding arbitration. It is also clear that the parties intended to permit disputes arising under the remaining five agreements to be brought in a court of law without being subject to binding arbitration. Moreover, there is no evidence that the parties ever intended to waive their rights to arbitration under the three earliest in time agreements. It would be unreasonable to interpret the incorporation clauses of the latter five agreements in a way that nullifies the jurisdiction and remedy clauses of the same integrated agreement. It would be equally unreasonable to interpret the jurisdiction and remedies clauses of the latter five agreements in a way that nullifies the binding arbitration clauses of the three earliest in time agreements without some express waiver of the right to seek arbitration. Therefore, the only

interpretation that effectuates the reasonable result intended by the parties is to find that the incorporation clauses of the latter five agreements incorporated the rights to arbitration available under the three earliest in time agreements, but as applied only to those three earliest in time agreements. In other words, the parties only intended to arbitrate disputes arising [from] the three earliest in time agreements and intended to permit disputes arising under the latter five agreements to be instituted in a court of law instead of arbitration.

TCO at 3-5.

Redmond takes issue with the trial court's decision, essentially arguing that CBSG's claims regarding **all eight** agreements must be decided by arbitration and, thus, the trial court erred in failing to compel arbitration of the claims pertaining to Exhibits D, E, F, G, and H. He reasons that:

> From the beginning, … the parties unambiguously agreed that all eventual disputes must be arbitrated. From the First Agreement referenced in the complaint, the parties anticipated that there were, or would be, other existing agreements, and they explicitly agreed that disputes arising from all past, currently [*sic*], and future agreements must be arbitrated. That is the indisputable intent and reach, not just of the binding arbitration clause, but of this single sentence in the incorporation clause: "The Parties agree that such **incorporated and restated obligations** and claims arising from **other** agreements with Purchaser are subject to the binding arbitration clause contained herein."
>
> As the First … Agreement alone indicates, the relationship between a receivables purchaser and a merchant/borrower involves a series of financing and refinancing agreements, and this was anticipated in the incorporation clause and its above-quoted final sentence mandating arbitration for claims under other agreements. Thus, the incorporation clauses of the first three agreements and guarantees explicitly contemplate other and future purchase agreements and guarant[e]es for which all disputes referring or relating to them must be arbitrated.
>
> Nothing in any later agreement…, including the Eighth Agreement…, contradicts or counters this reach. There's no provision in the Eighth Agreement … that in any way supersede[s]

or supplant[s] earlier ones. No provision supersedes, invalidates, or modifies the earlier agreement to arbitrate **all** disputes, including future disputes.

Redmond's Brief at 20-21 (citations to record and unnecessary capitalization omitted; emphasis added by Redmond). Redmond adds that the First Agreement's "explicit mandate for arbitration of all disputes, including future disputes … cannot be contradicted or defeated by mere silence in subsequent contracts[.]" **Id.** at 22. As such, he urges this Court to reverse the trial court's order to the extent that it overruled his preliminary objections and to mandate that the parties proceed to arbitration as to **all** claims asserted in the Complaint. **Id.** at 23.

Redmond is not entitled to any relief on this claim. There is no dispute that the First Agreement contains a binding arbitration clause; however, we do not believe the arbitration clause mandates arbitration of disputes arising from **future agreements**, as Redmond suggests. **See** Exhibit A at ¶ 27 (providing in relevant part, "any and all disputes between or among the parties to this Purchase Agreement and/or the Guaranty arising out of or relating to the Purchase Agreement and/or the Guaranty, or the breach thereof, … shall be resolved by arbitration").[5] Rather, the plain and unambiguous language of this provision mandates arbitration of **future disputes**, if any, **arising from the First Agreement**. **See Borough of Ambridge Water Authority v. Columbia**, 328 A.2 498, 501 (Pa. 1974) (interpreting an unlimited arbitration clause — *i.e.*, requiring arbitration of "any controversy or claim arising out of

---

[5] Exhibits B and C contain identical binding arbitration clauses.

or relating to this Agreement" — to mean that "**any dispute which may arise** between the parties **concerning the principal contract** is to be settled pursuant to its terms" and concluding that "there was a mutual agreement to arbitrate **future disputes**") (emphases added).

Moreover, we dispute Redmond's contention that the following incorporation clause included in the First Agreement expresses the parties' intent to incorporate **future** agreements:

> **INCORPORATION OF OTHER OBLIGATIONS AND CLAIMS.** Any obligation of the Merchant Seller and/or Guarantor(s) under **any other agreement** with Purchaser and claims available to Merchant Seller and/or Guarantor(s) resulting from any other agreement with Purchaser **are incorporated into and restated in this Purchase Agreement.** The Parties may exercise any remedy available under this Purchase Agreement, including, but not limited to confession of judgment, for any breach of any other agreement with Purchaser. Guarantor(s) acknowledges Guarantor(s) [*sic*] joint and several liability for these obligations are incorporated an [*sic*] restated herein, and acknowledges Purchaser's right to all remedies available under this Purchase Agreement are available to Purchaser for those incorporated and restated obligations, including, but not limited to confession of judgment. The parties agree that **such incorporated and restated obligations and claims arising from other agreements** with Purchaser are subject to the Binding Arbitration clause contained herein.

Exhibit A at ¶ 25 (emphases added).[6]

Redmond argues that the parties "unambiguously" and "explicitly" agreed that disputes arising from **all** agreements, **including future** agreements, must be arbitrated. Redmond's Brief at 20. In support of his

---

[6] Exhibits B and C contain identical incorporation clauses.

argument, he merely points to the final sentence of the foregoing incorporation clause mandating arbitration for claims arising from "other agreements[.]" *Id.* (citing Exhibit A at ¶ 25). We observe, however, that this provision is written in the present tense and is devoid of any explicit language referencing future agreements. Thus, Redmond's argument that the seven subsequent agreements entered into by the parties — namely, Exhibits B through H — are subject by incorporation to the arbitration clause contained in the First Agreement strains credulity. Contrarily, we discern from the plain and unambiguous language of the document that the incorporation clause was intended to incorporate only other agreements in existence as of the date the parties entered into the First Agreement. *See Stephan v. Waldron Elec. Heating and Cooling, LLC*, 100 A.3d 660, 665 (Pa. Super. 2014) ("[W]hen the language of a contract is clear and unequivocal, courts interpret its meaning by its content alone, within the four corners of the document." (citation omitted)); *Szymanowski*, *supra*.

As such, we also disagree with the trial court's conclusion that all eight agreements "have been incorporated **into each other**[.]" *See* TCO at 3 (emphasis added). Instead, we believe the record supports CBSG's argument, in which it avers that CBSG entered into "a series of contracts" with Redmond, each of which "incorporated and restated **pre-existing** agreements." CBSG's Brief I at 28 (emphasis added). CBSG contends that the Eighth Agreement is the controlling agreement here, as it is the most recent in time, and that at the time they entered the Eighth Agreement, the parties intended to eliminate

the arbitration provision contained in the first three agreements. CBSG's Brief II at 21-22, 26. In support of its argument, CBSG opines:

> Although the first three agreements contain arbitration provisions, the Eighth Agreement (*i.e.*, the controlling agreement) does not. Instead, through incorporation and integration, the entirety of Redmond's payment obligations under the first three agreements are incorporated and restated under the Eighth Agreement. … Applying [the general] principles [of Pennsylvania contract law] here, the parties intended to resolve their disputes not before an arbitrator, but before the judicial forum identified and agreed to in the Eighth Agreement under which Redmond's payment obligations are currently due.

*Id.* at 26 (cleaned up).

As CBSG points out, the Eighth Agreement's incorporation provision allows the receiver to pursue **all** of Redmond's obligations under the Eighth Agreement alone. *Id.* at 27. This provision provides:

> **INCORPORATION OF OTHER OBLIGATIONS AND CLAIMS. Any obligation of the Merchant Seller and/or the Guarantor(s) under any other agreement with Purchaser and claims available to Merchant Seller and/or Guarantor(s) resulting from any other agreement with Purchaser are incorporated into and restated in this Purchase Agreement.** The Parties may exercise any remedy available under this Purchase Agreement, including, but not limited to confession of judgment, for any breach of any other agreement with Purchaser. Guarantor(s) acknowledges Guarantor(s) joint and several liability for these obligations are incorporated and restated herein, and acknowledges Purchaser's right to all remedies available under this Purchase Agreement are available to Purchaser for those incorporated and restated obligations, including, but not limited to confession of judgment.

Exhibit H at ¶ 25 (emphasis added).[7]

---

[7] Exhibits C, D, E, F, and G contain identical incorporation clauses.

The Eighth Agreement also includes the following integration clause, indicating that the document represents the entire integrated agreement of the parties:

> **INTEGRATION AND MODIFICATIONS.** **This Purchase Agreement constitutes the entire integrated agreement of the Parties with respect to the subject matter contained in this Purchase Agreement.** Neither Merchant Seller nor the Guarantor(s) are relying on any statement by anyone not contained in this Purchase Agreement. Purchaser is not liable for any statements or representations made by anyone not contained in this Purchase Agreement. **This Purchase Agreement cannot be modified except by a writing signed by the Party to be bound.**

*Id.* at ¶ 23 (emphases added).[8]

Additionally, CBSG notes that Redmond consented to the trial court's jurisdiction in the Eighth Agreement, which incorporates and restates all other outstanding obligations between the parties:

> **JURISDICTION AND VENUE.** With the exception of Purchaser's right to seek injunctive relief in any appropriate jurisdiction, **any suit, action or proceeding arising hereunder, or the interpretation, performance, or breach thereof, or otherwise alleging claims related to or arising out of the Guarantor(s)' and Purchaser's relationship may be instituted in any Pennsylvania County Court of Common Pleas**, in the Federal District Court for the Eastern District of Pennsylvania, or in the Philadelphia County Municipal Court (collectively, the "Acceptable Forums"). **Guarantor(s) agree that each of the Acceptable Forums is convenient to Guarantor(s), submits to the jurisdiction of any of the Acceptable Forums, and waives any and all objections to jurisdiction or venue (including but not limited to inconvenient forum) in any of the Acceptable Forums. Should such proceeding be initiated in any other forum,**

---

[8] Exhibits A through G contain identical integration clauses.

> **Guarantor(s) waives any right to oppose any motion or application made by Purchaser to transfer such proceeding to an Acceptable Forum.** Guarantor(s) agree to waive the right to trial by jury in any lawsuit brought pursuant to this paragraph.

CBSG's Brief II at 15-16 (quoting Exhibit H at ¶ 28) (emphases added by CBSG).[9]

Hence, CBSG argues that, "through incorporation and integration, the entirety of Redmond's payment obligations under the first three agreements are incorporated and restated under the Eighth Agreement." CBSG's Brief II at 26 (cleaned up). Applying general principles of contract law, it concludes that "the parties intended to resolve their disputes not before an arbitrator, but before the judicial forum identified and agreed to in the Eighth Agreement under which Redmond's payment obligations are currently due." ***Id.*** We agree.

Based on our review, all eight agreements entered between the parties are nearly identical, with the one significant difference — aside from the specific purchase and sale terms of each contract — being that the first three agreements (Exhibits A, B, and C) contain an arbitration clause, while the subsequent agreements (Exhibits D, E, F, G, and H) do not. Instead, Exhibits D through H provide for judicial resolution of disputes. Moreover, as explained *supra*, each agreement contains incorporation and integration clauses. ***See, e.g.***, Exhibit H at ¶ 25 (providing that "claims … resulting from any other agreement … are incorporated into and restated in this Purchase Agreement");

---

[9] Exhibits C, D, E, F, and G contain identical jurisdiction clauses.

Exhibit A at ¶ 23 (allowing for modification by the parties in writing). Hence, we deem the crux of the issue before us to be whether the Eighth Agreement was intended to supersede the prior agreements.

"The question of whether a later agreement supersedes a prior arbitration agreement is tantamount to whether there is an agreement to arbitrate." *Jaludi v. Citigroup*, 933 F.3d 246, 255 (3d. Cir. 2019).[10] Thus, in applying the first part of the two-part test set forth in *Elwyn*, *supra*, and considering whether there is a valid agreement to arbitrate the claims arising from Exhibits A through H, we are guided by the decision in *Jaludi*, in which the Court so aptly explained:

> Under Pennsylvania law, the later of two agreements between the same parties as to the same subject matter generally supersedes the prior agreement. *See, e.g.*, *In re Klugh's Estate*, … 66 A.2d 822, 825 ([Pa.] 1949) (holding that the appellant had abandoned an option contained in the first lease by agreeing to three subsequent leases that lacked an option). This is true even if the first agreement includes an arbitration clause and the second agreement does not. *See Collier*[ *v. National Penn Bank*], 128 A.3d [307,] 311[ (Pa. Super. 2015)].
>
> In *Collier*, a customer sued a bank for improperly assessing overdraft fees. *Id.* at 308. The bank attempted to compel arbitration. *Id.* at 309. The trial court denied the bank's petition to compel arbitration, holding that the later 2010 Account Agreement controlled, rather than the 2008 Account Agreement. *Id.* at 309-11. The Superior Court of Pennsylvania affirmed, explaining that the 2010 Agreement had superseded the 2008 Agreement. *Id.* at 311. Unlike the 2008 Agreement, the 2010

---

[10] We recognize that decisions of federal circuit courts are not binding on this Court but may serve as persuasive authority. *See Dobransky v. EQT Production Company*, 273 A.3d 1133, 1146 n.10 (Pa. Super. 2022) (citations omitted).

> Agreement did not contain an arbitration clause; instead, the 2010 Agreement provided that disputes would be resolved either by the bank or through litigation. *Id.* The Superior Court reasoned that the 2010 Agreement "addresses the same subject matter as the 2008 Agreement and is similarly comprehensive in its terms." *Id.* As such, the parties intended the 2010 Agreement to supersede the 2008 Agreement, "certainly with regard to judicial resolution of disputes in lieu of arbitration." *Id.* The parties therefore had no agreement to arbitrate. *Id.*

*Id.* at 256.

Similarly, in the matter before us, we deem the only reasonable conclusion to be that the parties intended the Eighth Agreement to supersede the prior agreements. Consequently, the arbitration clause contained in the first three agreements has been rescinded and all of CBSG's claims are subject to judicial resolution.[11] There is no longer an agreement to arbitrate. *See also In re Klugh's Estate*, 66 A.2d at 825 ("A contract containing a term inconsistent with a term of an earlier contract between the same parties is interpreted as including an agreement to rescind the inconsistent term in the earlier contract." (quoting Restatement (First) of Contracts § 408)).

Accordingly, we reverse the trial court's September 26, 2022 order to the extent that it sustains Redmond's preliminary objections and compels arbitration of the claims arising from Exhibits A, B, and C. Additionally, we affirm the order to the extent that it overruled the preliminary objections, and

---

[11] We note that the Eighth Agreement was not the first agreement in which the parties intended to rescind the arbitration clause of the earlier agreements. Rather, the parties first exhibited their intention to abandon the arbitration clause in Exhibit D, and they continued to agree to judicial resolution of disputes in lieu of arbitration in each subsequent agreement. *See* Exhibits E–H.

we remand this matter to the trial court for the litigation of all of CBSG's claims.

Order affirmed in part. Order reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/09/2024